UNITED STATES of America,
Plaintiff-Appellee,

v.

John David WOODALL, Defendant-Appellant.

Nos. 28352, 28353.

United States Court of Appeals,
Fifth Circuit.

May 18, 1970.

Rehearing Denied July 7, 1970.

On Rehearing En Banc Feb. 24, 1971.

Thornberry, Circuit Judge, concurred in part.

Coleman, Circuit Judge, concurred in part, dissented in part and filed opinion.

Goldberg, Circuit Judge, dissented and filed opinion.

John P. Farra, Clyde Woody and Marian Rosen, Houston, Tex., for appellant.

Macon L. Weaver, U. S. Atty., R. Macey Taylor, Asst. U. S. Atty., Birmingham, Ala., for appellee.

Before COLEMAN, GOLDBERG, and MORGAN, Circuit Judges.

COLEMAN, Circuit Judge:

This is the second appearance of this case in this Court. It was first here sub nom. Tucker v. United States, 5 Cir., 1969, 409 F.2d 1291. The detailed history of the matter appears in that opinion. For present purposes it is sufficient to say that Woodall was under three multiple count indictments charging him with robbery of federally insured institutions in or near Birmingham. On February 21 and 23, 1966, on his own motion, under old Rule 11,[1] represented by privately retained counsel, Woodall withdrew his not guilty pleas to two indictments and entered pleas of guilty. The third indictment is still pending in the District Court.

On February 23, 1966, concurrent sentences of twenty years were imposed in each case. It is undisputed that prior to the plea changes the District Court gave Woodall no advice as to the maximum possible penalties he would face upon taking that action.

The prior Court held:

"It is our judgment that this situation requires a remand of the case to the trial court for an evidentiary hearing to determine whether Woodall knew the maximum possible penalties, rather than a reversal by this Court of his convictions. Lane v. United States, 5 Cir., 373 F.2d 570 (1967). It is well settled that a plea of guilty is invalid as not being understandingly entered if the defendant does not know the maximum possible penalty for the offense. Marvel v. United States, 380 U.S. 262, 85 S.Ct. 953, 13 L.Ed.2d 960 (1965). The question, however, is not whether he learned of such penalty from the judge, in a formal proceeding, but whether he had knowledge as to such matter, whether it was from the judge, his lawyer, his bondsman, or from some other source. Kotz v. United States, 8 Cir., 353 F.2d 312 (1965); United States v. Kent, 7 Cir., 397 F.2d 446, 451 (1968). Woodall's case will be remanded to the trial court for the limited purpose of hearing and determining whether he knew the maximum possible penalties for the charges to which he pled guilty. If it should be found that he did not, the trial court will set aside his convictions and grant him a new trial. If it should be found that he did, the judge will make his findings and conclusions, and direct that the record of that proceedings be returned to this Court."

Upon remand, the government sought to show, *and did show*, by the testimony of Woodall's former attorney that prior to the entry of the pleas of guilty he advised his client of the maximum applicable penalties. This was done over the repeated objection of Woodall's present counsel, newly retained to represent him at the hearing. The objection was that such a revelation from such a source violated the attorney-client privilege.

Before the completion of the hearing, but after giving the above testimony, the witness [former counsel] informed the

---

1. "The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge." Rule 11, Federal Rules of Criminal Procedure, prior to July 1, 1966.

Court that upon a conference with the various atttorneys in the case he was convinced that his testimony did violate the privilege. The District Court, however, announced that he was acting on the command of the mandate from this Court that it be ascertained if Woodall learned of the maximum penalties from his lawyer, his bondsman, or some other source. Therefore, he let the record stand and found that Woodall had been advised by counsel as to the penalties. Inherent in the remand, of course, was the requirement that the question be settled on evidence properly admissible.

The threshold issue, then, is whether the admission of this testimony was erroneous.

On the question of privileged communications, the federal courts follow the law of the state of the forum, Baird v. Koerner, 9 Cir., 1960, 279 F.2d 623, 628.

Alabama has a statute on the subject, Alabama Code, Title 7, Section 438, which provides that:

> "No attorney or his clerk shall be competent or compelled to testify in any court in this state, for or against the client, as to any matter or thing knowledge of which may have been acquired from the client, or as to advice or counsel to the client given by virtue of the relation as attorney or given by reason of anticipated employment as attorney, unless called to testify by the client, but shall be competent to testify, for or against the client, as to any matter or thing knowledge of which may have been acquired in any other manner."

In Cooper v. Mann, 1962, 273 Ala. 620, 143 So.2d 637, the Supreme Court of Alabama, interpreted this statute as follows:

> "It is generally held, in absence of statute, that *communications between attorney and client* [emphasis ours] are privileged and neither attorney nor client can be compelled to testify as to the *contents of such communications* [emphasis ours]. Birmingham

Railway & Electric Co. v. Wildman, 119 Ala. 547, 24 So. 548; 58 Am.Jur., Witnesses, Sec. 460.

> "The term 'communication' imports not only words uttered, but information conveyed by any other means. Therefore, sight is just as privileged as hearing, and privilege applies to all knowledge acquired in either instance, where acquisition is due to the attorney-client relation. 58 Am.Jur., Witnesses, Sec. 486. Acts as well as words fall within the privileged. Ex parte McDonough, 170 Cal. 230, 149 P. 566, L.R.A.1916C, 593.

> "Our statute fully recognizes the foregoing principles." 143 So.2d 638, 639.

Had we been writing as a matter of first impression we might have thought that the federal statutes are matters of public knowledge and could not be the subject of privilege. It is apparent, however, that what the Alabama statute prohibits is the revelation of *communications* between attorney and client. If there is no fraud, or complicity in a proposed violation of the law, or breach of a duty to the Court, the content of the communication is immaterial. If there is a communication it is privileged. The Supreme Court of Alabama categorically stated that neither attorney nor client can be compelled to testify as to the *contents* of such *communications*. We are compelled, therefore, to hold that the testimony of former counsel should not have been admitted over the objection of his erstwhile client.

This leaves the record again devoid of any proof that Woodall was ever informed from any source of the maximum penalties which might flow from the entry of the pleas of guilty.

The mandate of the prior panel of this Court was that if "it should be found that he did not, the trial court will set aside his convictions and grant him a new trial." It would thus appear that nothing remains to be done on this appeal but to reverse the most recent

judgment of the District Court and remand with directions and the appellant be allowed to plead over.[2]

Reversed and remanded, with directions that the appellant, John David Woodall, be allowed to plead over to the indictments in these cases.

Reversed and remanded, with directions.

## ON PETITION FOR REHEARING

The opinion of the Court in this case dated May 18, 1970, contained the following language:

"On the question of privileged communications, the federal courts follow the law of the state of the forum, Baird v. Koerner, 9 Cir., 1960, 279 F.2d 623, 628."

In its petition for rehearing en banc the Government asserts that in criminal prosecutions in the federal courts this question is not governed by state law but by Rule 26, Federal Rules of Criminal Procedure. That rule is as follows:

"In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by an act of Congress or by these rules. The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

We observe first that the Government in its original and supplemental brief (when we decided the case) made no mention of Rule 26. It argued that under Alabama law the question of whether counsel advised his client of the maximum penalties for the criminal offenses involved was not privileged. We rejected that argument. Rule 26 is mentioned for the first time in the petition for rehearing.

Under both the state statute and Rule 26 the outcome is the same.

We quote from Baird v. Koerner, supra:

"Confidential communications between client and attorney were privileged under common law. The privilege is of ancient origin. Prichard v. United States, 6 Cir., 1950, 181 F.2d 326, affirmed, 339 U.S. 974, 70 S.Ct. 1029, 94 L.Ed. 1380. The doctrine is subject to statutory regulation and limitation, but except as so modified the statutes are merely declaratory of the common law rule. 97 C.J.S. Witnesses § 276. The doctrine is based on public policy. While it is the great purpose of law to ascertain the truth, there is the countervailing necessity of insuring the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense. This assistance can be made safely and readily available only when the client is free from the consequences of apprehension of disclosure by reason of the subsequent statements of the skilled lawyer."

In a Dyer Act prosecution in 1967, Love v. United States, 386 F.2d 260, the Eighth Circuit wrote, "This court is bound by the law of the forum state on the question of privileged communica-

---

2. We emphasize that this case is decided as one in which the record fails to reveal that Woodall was advised of the maximum penalties by anybody, in or out of court, prior to the entry of his pleas.

This is not a case in which the defendant was misinformed as to the maximums provided by law but nevertheless was sentenced for less than that of which he had been advised, as well as for less than the permissible maximum. As to such a situation see Eakes v. United States, 5 Cir., 1968, 391 F.2d 287 and Grant v. United States [5 Cir., April 6, 1970] 424 F.2d 273.

See Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 [May 4, 1970] to the effect that a plea of guilty must be entered with a sufficient awareness of the likely consequences, page 6, slip opinion.

tions", citing Baird v. Koerner, supra, and United States v. Pape, 2 Cir., 1944, 144 F.2d 778. The opinion in *Love* did not mention Rule 26, Federal Rules of Criminal Procedure.

We note also the decision of the Second Circuit in United States v. Kovel, 1961, 296 F.2d 918, 919, contempt proceedings for refusal to answer questions before a grand jury. In Footnote 2, 296 F.2d at 921, the Court stated that

"N.Y. Civil Practice Act, § 353, is a legislative recognition of this principle [the attorney-client privilege]. We doubt the applicability of the New York statute in a Federal grand jury proceeding; plainly, under F.R.Crim. Proc. 26, 18 U.S.C., it would not be applicable in a Federal criminal trial and we cannot believe the framers of the Criminal Rules intended state law to apply in the former case when it would not in the latter. However, decision of the issue is unnecessary, for there is nothing to indicate the New York legislature intended to do more than enact the principles of the common law."

The Alabama statute, Title 7, Section 438, is declaratory of the law on privileged communications between attorney and client as administered by the courts prior to the enactment of the statute, Ex Parte Enzor, 270 Ala. 254, 117 So.2d 361 (1960).

We hold therefore that under the plain terms of Rule 26, communications from attorney to client, advising a client, are privileged in the federal courts of Alabama. As did the Second Circuit in United States v. Kovel, supra, we find it unnecessary to elaborate any further. We adhere to the result announced in the original opinion.

The Government further contends that the testimony of Woodall's attorney should be permitted because Woodall's appeal constitutes an implied attack on the effectiveness of counsel, i. e., any effective counsel would most certainly have advised his client of the prospective penalties. The difficulty with this con-

tention is that Woodall attacked his sentence on the ground that the sentencing court did not advise him of the maximum penalties. The record shows that Woodall first entered a plea of "not guilty" in September. It was not until the following February that he withdrew that plea and, with the assistance of counsel, entered his plea of "guilty". The point is that the prior panel in this case, as cited in our original opinion, remanded the case to determine if Woodall had from any source been advised of the maximums. The prior panel was clearly without authority to direct that the question be settled on evidence to be obtained in violation of the law. Of course, it made no such direction.

This leaves only the question of whether the Government should be permitted to open the door slightly by permitting counsel, over his client's objection, to state *only* that he did advise of the penalties, without supplying the details. Such a procedure would result in opening the door all the way. It would inescapably involve another question: Whether counsel had correctly stated the penalties? A slight breach could thus inevitably lead to a total break. As a matter of fact, Woodall claims now that his counsel did not correctly advise him of the penalties.

It is no answer, we think, to say that the contents of a criminal code are in the public domain and not the subject of privileged advice from a lawyer. If that were controlling no defendant need be advised of the penalties. He could be presumed to know them himself, which is not now the law.

Those guilty of bank robberies and other crimes should promptly and relentlessly be brought to justice. In doing this, however, we have other laws designed to reduce the chances of injustice. We are not disposed to begin eroding a rule of ancient origin, grounded on public policy, which is the keystone of the attorney-client relationship, a right stringently guaranteed by the Constitution. The well defined exceptions to the

rule were mentioned in the original opinion.

Finally, when we filed our original opinion we were aware of Pollock v. United States, 5 Cir., 1953, 202 F.2d 281, cert. denied 345 U.S. 993, 73 S.Ct. 1133, 97 L.Ed. 1401. In that case, however, the Court held that no confidential communication of an attorney-client relationship was shown by the evidence and, further, the activities were in furtherance of a violation of the law, which the privilege does not protect.

The Petition for Rehearing is denied by the panel.

Denied.

## ON PETITION FOR REHEARING EN BANC

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY *, Circuit Judges.

CLARK, Circuit Judge:

The procedural difficulties which bring us to the present en banc consideration began when Tucker v. United States, 409 F.2d 1291 (5th Cir. 1969) remanded appeals from the original convictions of John David Woodall because, from the record developed on the acceptance of his guilty pleas, the court was unable to find that he had been advised of the maximum possible penalty for the offenses involved and thus the court could not ascertain that Woodall had made a voluntary and intelligent choice among alternative courses of action open to him when he changed his pleas of not guilty to guilty.[1] Upon remand, the district court held the directed supplementary hearing to determine if Woodall in fact knew the sentence consequences involved. At that hearing the personally selected and privately employed attorney who had

originally represented Woodall was called to the stand and, over the objection of Woodall, testified that he correctly informed Woodall of the maximum limits of punishment under each count of each indictment. The court resentenced Woodall and he brought the present appeal. On May 18, 1970, a panel of this Court initially held the testimony of Woodall's former counsel was improperly admitted because under Alabama law it was a privileged communication between an attorney and his client. With such evidence deleted, the supplemented record still failed to prove that Woodall's change of plea was voluntarily, intelligently made. Wherefore, the panel held he had to be allowed to plead over. This en banc rehearing emanates from that panel determination as modified on July 7, 1970 on Petition for Rehearing. The court, en banc, now determines (1) the attorney-client privilege which Woodall sought to invoke had been waived, (2) the testimony of Woodall's attorney as to the advice he gave his client was sufficient proof of compliance with Fed.R. Crim.P. 11 (before its amendment on July 1, 1966), (3) the May 18, 1970 opinion of a panel of this court as modified on rehearing, reversing and remanding this cause with directions to allow Woodall to plead over, should be withdrawn and (4) the conviction of John David Woodall should be affirmed.

For ease of reference, we here elaborate upon some portions of the procedural setting which lead us to this conclusion. The first prong of this dual appeal is from the district court's criminal action, CR 65–234–S, in which Woodall and others were indicted on August 19, 1965 in a two-count indictment for robbery of the Green Valley Branch of the First National Bank of Birmingham, Alabama. Count 1 of this indictment was framed under 18 U.S.C.A. § 2113(a) (1970) which proscribes the taking by force and violence of property of an insured bank and permits punishment by a

---

* Judge Roney did not participate in the consideration or decision of this case.

1. The substantive background of the crimes is detailed in that original appeal, Tucker v. United States, *supra.*

fine of 5,000 dollars and/or imprisonment for up to 20 years. Count 2 was under 18 U.S.C.A. § 2113(d), which provides that if, in the course of committing a bank robbery covered by subsection (a), the robber uses a deadly weapon, a fine of 10,000 dollars or imprisonment for up to 25 years or both such fine and imprisonment may be imposed. The second appeal comes from criminal action CR 65–238–S, in which Woodall and others were simultaneously indicted for an earlier robbery of City Federal Savings and Loan Association of Birmingham, Alabama. Count 1 of this indictment involves the same subsection (a) and Count (2) thereof involves the same subsection (d), as detailed above.

On February 23, 1966, Woodall was brought before the court in Cause 238, involving the City Federal robbery. He requested leave of the court to withdraw his pleas of not guilty and enter pleas of guilty to each count. He represented in open court that he: (i) had consulted with his father and his attorney, (ii) had received no threats or promises in connection with his change of plea, (iii) had not been subjected to plea bargaining as to the length of his sentence, (iv) understood the charges to which he was pleading guilty, and (v) was pleading guilty because he was indeed guilty of the crime charged. An abbreviated form of the same procedural format was followed with regard to Woodall's changes of pleas involving the robbery of the Green Valley Branch in Cause 234. The court thereupon sentenced Woodall to the custody of the Attorney General, subject to the parole eligibility provisions of 18 U.S.C.A. § 4208(a) (1969), for concurrent periods of 20 years on each separate indictment but did not expressly render such sentences on either or both of the subdivided counts of either separate indictment.[2]

Our opinion in *Tucker, supra,* noted that the original record did not show Woodall received the requisite advice as to the sentence consequences of his changes of pleas. The remand directed the district court to hold an evidentiary hearing which would determine whether Woodall had, in fact, received information from the court, from his attorney, from his bondsman or any other source as to the sentence consequences of his changes of pleas. When the district court proceeded to hold the hearing which this court directed, the government called his former counsel to testify as to what pre-plea advice he had given Woodall. An objection was duly interposed by Woodall's newly employed counsel, claiming that any testimony as to such advice would constitute a privileged communication. When it was overruled, the attorney-witness testified:

"I informed him [Woodall] of what the maximum limits of punishment were under each one of these indictments, * * * yes, I did advise him as to the maximum limits of punishment under subsection (a) and subsection (d) [of 18 U.S.C.A. § 2113]."

On cross-examination, the following colloquy took place:

"Q * * *, therefore, * * * the total penalty you understood to be [applicable] under indictment Criminal 65–234–S would be a total of forty-five years, $50,000 fine?

"A No, ma'am. That's never been my understanding of that law even though I have seen sentences otherwise.

"Q All right. But you did understand it to be separate punishment on each of the counts in that indictment?
"A That's correct.

---

2. The record reflects that counsel, the defendant and the court referred to the pleas to the separate subdivisions of the indictment in each cause in the singular throughout all of their discussions. It is assumed by the position of all parties to this appeal and by this court for the purposes of this opinion, that Woodall intended to change his pleas to each separate count in the two indictments from not guilty to guilty, and that the court accepted all changes of pleas on this basis.

"Q And indictment, Criminal 65–238–S which contains Count 1 as to 2113(a) and Count 2 as to 2113(d), would your answers be the same with reference to that indictment?

"A Yes, with the exception that I gave you concerning consecutive or concurrent sentences.

"Q All right. In other words, it was your understanding as to Count 1 it was twenty years and $5,000, and as to Count 2 it was twenty-five years and $10,000 fine?

"A That's correct.

"Q And you understood that the defendant could be convicted and sentenced on each of the counts, separately, under that indictment?

"A Did I understand that he could be sentenced under that indictment for that total time?

"Q Yes, sir.

"A Yes. But I say, I didn't agree with it."

After a brief recess, counsel concluded his testimony with a statement that, upon reflection, he believed his testimony fell within the ambit of privileged communications and answering the questions propounded to him was improper. The panel in the present appeal agreed and reversed and remanded his convictions with directions that he be allowed to plead over.

## I. WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE

■ When Woodall appealed his sentences to this court he asserted that his pleas were invalid because they were not intelligently made, since he lacked knowledge of the sentence consequences. Although implicit, the heart of his defense was the assertion that he did not know what sentences could result. Over 92 years ago the Supreme Court of the United States held that when one has entered upon such a line of defense it constitutes a waiver of the right to bar the reception of evidence as privileged. Hunt v. Blackburn, 128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488 (1888). A leading text in the field of evidence arrives at the same conclusion. It notes that waiver by implication involves two basic elements. The first is subjective—Does the person holding the right to claim the privilege intend to waive it? The second element is objective—Is it fair and consistent with the assertion of the claim or defense being made to allow the privilege to be invoked? This objective determination should be based upon whether the position taken by the party goes so far into the matter covered by the privilege that fairness requires the privilege shall cease even when, subjectively, he never intended that result. Thus, the text observes, a client's offer of his own or his attorney's testimony as to a specific communication constitutes a waiver as to all other communications on the same matter, stating: "This is so because the privilege of secret communication is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former." 8 Wigmore, Evidence (McNaughton Rev. 1961) § 2327 at p. 638. McCormick on Evidence, §§ 87 and 106, is in accord in principle.

An explicit factual ground for waiver also exists. When Woodall brought his initial appeal to this court in *Tucker*, he made a personal affidavit that coercion existed which voided his changes of pleas by virtue of the pre-plea advice he received from his original attorney as to the consequences to his wife of their joint pleas. The affidavit was made in support of his petition for leave to prosecute his appeal without prepayment of costs on April 7, 1966. In pertinent part, he swore:

"Further, petitioner was under coercion for that his employed counsel, William McCullough of Birmingham, had, five days prior to trial literally withdrawn from the case by so advising both petitioner and said petitioner's father (Mr. Roy D. Woodall of Fort Worth by telephone to which peti-

tioner's father responded by a telegraph); that petitioner next saw Mr. McCullough on the morning of the trial, *whereupon Mr. McCullough told said petitioner that he must go to trial that day, either with or without counsel and that he McCullough didn't know any alternative but to enter a plea of guilty for both petitioner and the third codefendant, Mrs. John David Woodall (petitioner's wife, then two months out of child birth), and, further, that if found guilty by jury, Mrs. Woodall would suffer a twenty-five year sentence as compared to five years probation if both she and petitioner would plead guilty.*" (emphasis supplied).

By offering his own testimony as to a part of the conversation relative to plea results, he waived the right to claim the privilege as to the whole thereof. 8 Wigmore on Evidence § 2327(5). This is the same reasoning as advanced in

Brown v. United States, 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958). There the Court held that where a petitioner took the stand voluntarily and testified in her own behalf, she could not then invoke the privilege against self-incrimination on cross-examination regarding any matters made relevant by her direct examination. The court reasoned:

"The interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination." (356 U.S. at 156, 78 S.Ct. at 627).

Additionally, we find persuasive Wigmore's comments relating to waiver of the equally sacrosanct physician-patient privilege, even though he frankly acknowledges the court majority view is contrary. 8 Wigmore Evidence (McNaughton Rev.1961) § 2389 at p. 855.[3]

---

3. The language is:

"In the first place, the *bringing of an action* in which an essential part of the issue is the existence of physical ailment should be a *waiver* of the privilege for all communications concerning that ailment. The whole reason for the privilege is the patient's supposed unwillingness that the ailment should be disclosed to the world at large; hence the bringing of a suit in which the very declaration, and much more the proof, discloses the ailment to the world at large, is of itself an indication that the supposed repugnancy to disclosure does not exist. By any other conclusion the law practically permits the plaintiff to make a claim somewhat as follows: 'I tender witnesses A, B, and C, who will openly prove the severe nature of my injury. But I object to the testimony of witness D, a physician called by the opponent to prove that my injury is not so severe as I claim, because it is extremely repugnant to me that my neighbors should learn the nature of my injury'! The position is especially absurd when (as is often the case) the dreaded disclosure, which the privilege prevents, is the fact that the plaintiff has suffered no injury at all. (Emphasis in original)

The clear trend of the law lies with *Wigmore's* cogent reasoning. The courts of Missouri have long followed it. In State

v. Swinburne, 324 S.W.2d 746 (Mo. en banc 1959), that court refused to allow a defendant to plead insanity and at the same time invoked privilege to bar a physician's testimony. *See also* State ex rel. McNutt v. Kett, 432 S.W.2d 597 (Mo. en banc 1968). Other states have reached the same result by statute. *See* City and County of San Francisco v. Superior Court in and for the City and County of San Francisco, 37 Cal.2d 227, 231 P.2d 26, 28 (en banc 1951), in which case the court invoked § 1881 Cal.C. Civ.P., reasoning that to allow the privilege to continue violates the old aphorism that "no man can have his cake and eat it too". Preeminent study groups use the same rationale. Rule 27 of the Model Code of Evidence adopted by the National Conference of Commissioners on Uniform State Laws provides in subsection (4) that a waiver of privileged communication is implied by the making of a claim or defense embodying the subject matter of the communication. The Commissioners' Notes state: "All privileges are blockades to the ascertainment of the truth and should be conservatively and reluctantly granted." The Advisory Committee's notes to Proposed Rules of Evidence for the United States District Courts and Magistrates (Preliminary Draft 1969) R. 5–11, 46 F.R.D. 161, 280 (1969) concerning waiver of privilege by voluntary disclosure, state

However, it should be noted that the Federal Rules of Civil Procedure explicitly provide that any inquiry into such privileged matter waives the physician-patient privilege in its entirety.[4]

In other situations this court in common with most others, federal and state, has permitted an unfavorable inference to be drawn from action which attempts to use privilege as a sword instead of a shield. In United States v. Pledger, 409 F.2d 1335 (5th Cir. 1969) we held that a defendant who chooses to waive the privilege against self-incrimination by taking the stand, but fails to deny or explain matters within his knowledge, subjects himself to an inference that his testimony on these subjects would have been adverse to his interest. It would be an affectation to cite the almost unbroken line of cases which permit an instruction to the jury on the unfavorable inference which results when a party suppresses evidence obviously under his control. What we say here though is more. We hold that the truth must out. It cannot be hidden under a cloak of pseudo-secrecy and hinted at by "permissible inferences".

Courts earnestly pursuing reality would be hard put to justify a rule that would allow a defendant circumstanced as Woodall here to assert that his solemn pleas of guilty were negated for lack of accurate information of sentence consequences, then permit him to run a procedural trap play that would block the development of the plain truth which shows his own attorney told him exactly what he could expect. Not only does this specious sophistry fail to protect confidential relationships, it trifles

with the truth—it scoffs at justice—and we reject it flatly.[5]

## II. INFORMATION AS TO PLEA CONSEQUENCES

■ The colloquy quoted above demonstrates that Woodall was advised of the maximum possible sentence on each count in each indictment he faced prior to the time that his plea of guilty was entered. The record further demonstrates that Woodall's attorney believed that the then current practice of the district judge before whom this case was pending, of considering the offenses defined by subsections (a) and (d) as separate offenses which would permit a pyramiding of punishments upon a finding of guilty under both counts of the indictment, was an incorrect interpretation of the law. While not quoted, at one point in the remand proceedings during the attorney-witness's direct examination, the new counsel for Woodall objected to the former counsel's testimony on the grounds that he had stated only a conclusion and had not stated specifically what he told Woodall. Yet, on cross-examination, the attorney-witness was only asked to express his understanding of the maximum permissible penalties and of the possibilities of pyramiding those penalties on multiple convictions. The record reflects that Woodall pointedly refrained from making an inquiry of the witness designed to evoke the specifics of what Woodall was told.

At the conclusion of this hearing the district court found that Woodall received advice from his original attorney concerning the maximum limits of pun-

---

that since the central purpose of most privileges is the promotion of the interest or relationship protected by endowing it with a supporting secrecy, the privilege should terminate when the holder, by his own act, destroys this confidentiality, citing the above referenced provisions from Wigmore and McCormick. *See also* ALI Model Code of Evidence, Rule 231 (b) (1942).

4. *See* Rule 35(b) (2).

5. Counsel for Woodall now urge that no attack was made upon the performance of Woodall's original counsel's duties. Such a position is inconsistent with Woodall's prior sworn statement set out above. We nevertheless note that our holding that the privilege was waived is not premised on this basis.

ishment provided by law for each offense described in the separate indictments and that the attorney had based such advice on the current provisions of the United States Code and his understanding of the cases interpreting that code section. Taking the facts in the record and all reasonable inferences therefrom in the light most favorable to the judge's findings, our review discloses that these findings were based upon substantial evidence and that they are not clearly erroneous. Although the hearing involved a phase of a criminal case, this is the appropriate standard of review for findings made in an evidentiary proceeding conducted under a mandate of this court.

■ The panel originally determined that the privileged status of the communication to the attorney was to be tested by Alabama law. On rehearing, the panel noted that Love v. United States, 386 F.2d 260 (8th Cir. 1967) [a federal criminal case which accorded controlling effect to the privileged communication laws of the forum state] supported their original position. Nevertheless, they withdrew their decision and expressly pretermitted the State law issue, resolving that, since the Alabama statutes on privileged communication were merely an embodiment of the common law, a determination of the applicability of the statutes could be avoided. While such a ruling provides one means of disposing of this issue, we deem it unsound judicial husbandry to lend any currency to the notion that this circuit might follow Love v. United States. We respectfully decline to do so. Procedural stability in future criminal cases in this circuit dictates that we meet the issue directly. Neither the statutes nor the decisional law of the forum state control the admissibility of evidence in any phase of a federal criminal action. Under Fed.R.Crim.P. 26, the principles

of the common law, "as they may be interpreted by the courts of the United States in the light of reason and experience", govern over State law and precedent. The committee note to this rule makes it clear that the rule sought the development of a uniform body of rules of evidence applicable to federal criminal trials to the end that under the same fact situation, the case of a man accused of violating a federal statute would not be affected by the State situs of his actions or trial.[6] The rule is based on Wolfle v. United States, 291 U.S. 7, 54 S.Ct. 279, 78 L.Ed. 617 (1934), and Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369, (1933). *See also* Pollock v. United States, 202 F.2d 281 (5th Cir. 1953); Hayes v. United States, 407 F.2d 189 (5th Cir. 1969), cert. denied 395 U. S. 972, 89 S.Ct. 2133, 23 L.Ed.2d 777 (1969); and 95 A.L.R.2d 320, 341. *Cf.* Falsone v. United States, 205 F.2d 734 (5th Cir. 1953) and United States v. Finley, 434 F.2d 596 (5th Cir. 1970).

■ In the present en banc proceedings, counsel for Woodall alternatively assert that his pleas of guilty must now be set aside and he must be allowed to plead anew because the record establishes an inference that Woodall was advised the sentences under each count of each indictment could be pyramided. We disagree with this *arguendo* contention. In the first place, the sole reason that the attorney-witness's lips were sealed as to any part of the truth of the communications between himself and his former client was the insistence of Woodall that his former attorney not tell the whole truth. In such a situation, the settled law of this circuit permits an inference to be drawn that the testimony so concealed would be unfavorable to the person who sequesters it. United States v. Pledger, *supra;* Ford v. United States, 210 F.2d

6. The committee on Rules of Practice and Procedure of the Judicial Conference reaches this same result in its preliminary draft of Rules of Evidence for the

United States District Courts and Magistrates (March 1969). Rule 5–01, 46 F.R.D. 161, 243.

313 (5th Cir. 1954); and McClanahan v. United States, 230 F.2d 919 (5th Cir. 1956), cert. denied 352 U.S. 824, 77 S. Ct. 33, 1 L.Ed.2d 47 (1956).

■ A second reason for rejecting such a contention is based upon the reasoning of Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In that case the defendant Brady's counsel advised him that if he was convicted it was possible for the jury to impose the death penalty, yet later it was made clear in United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), that this advice was legally incorrect because the jury would possess no power to impose the death sentence in a situation where a judge could impose only a lesser penalty if the cause was tried by the court or if a plea of guilty was entered. In Part III of *Brady,* a unanimous Supreme Court held Brady's plea was intelligently made. He was advised by competent counsel. He was made aware of the nature of the charge against him. He could not withdraw his guilty plea merely because it was discovered, after the plea had been entered and accepted, that his attorney's advice to him as to the possible penalty proved to be incorrect because of subsequent legal pronouncements. *See also* Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), which upheld a guilty plea despite a counsel's advice about the admissibility of a confession, which advice the Supreme Court assumed was mistaken and was critical to the defendant's decision to plead guilty to a crime he asserts he did not commit, and Colson v. Smith, 438 F.2d 1075 (5th Cir. 1971).[7]

On October 24, 1967, twenty months after Woodall was sentenced, this circuit considered an appeal from a conviction for bank robbery entered by the same judge before whom Woodall stood on February 23, 1966. We at that time held that the district judge's legal conception that Section 2113(a) and 2113 (d) could result in separate pyramided or concurrent sentences for the same bank robbery was erroneous. Although prior precedent in this circuit had reached the same conclusion [*see* Prince v. United States, 230 F.2d 568 (1956), rev'd on other grounds, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957)], it would certainly have been the duty of the attorney representing Woodall to inform his client of the known attitude of the district judge who that day would act on his prospective plea. This is what the evidence says to us he did. He told him he, as an attorney, was of the opinion that the sentences under the separate counts could not be pyramided but a more stringent penalty was possible at the hands of this judge at this time. Under such a set of circumstances the district court was entitled to conclude that the appellant's attack on the intelligence of his pleas of guilty was convincingly refuted by the testimony of his appointed counsel and the reasonable inferences to be drawn therefrom. *See* Goodwin v. United States, 391 F.2d 278 (5th Cir. 1968).

■ There is a third reason. We hold that the most unfavorable information Woodall could have received from the attorney of his own choosing was that *harsher* sentences awaited his pleas of guilty than could actually have been imposed under the law then in effect. The cases in this circuit relative

---

7. There are no viable bases to challenge either the voluntariness or understanding of the guilty pleas here. Not only has Woodall failed to pursue his affidavit claim that he was coerced into changing his pleas, but he. has also expressly insisted at every subsequent juncture of his appeals that he makes no attack on the professional conduct of his original counsel. The reason for this course, be it tactical or true, is obvious. A claim of counsel misconduct would unseal the lawyer's lips so he could defend his reputation with the truth, despite any claim of privilege. Woodall's dilemma thus turns out to have the usual number of horns. He cannot escape the one without impaling himself on the other.

to such a situation are clearly in conflict. Eakes v. United States, 391 F.2d 287 (5th Cir. 1968), followed by the Tenth Circuit in Murray v. United States, 419 F.2d 1076 (10th Cir. 1969), expressly held where the appellant received a lesser sentence than either that which the law permitted or that which he was informed the court could impose, his plea of guilty would not be set aside for lack of understanding of its consequences. Stephen v. United States, 426 F.2d 257 (5th Cir. 1970) and Grant v. United States, 424 F.2d 273 (5th Cir. 1970) reached a contrary result. In those cases the panels held a defendant who had been given incorrectly severe sentence information could not make an intelligent choice and was entitled to have his conviction set aside and to plead anew. *See also* United States v. Perwo, 433 F.2d 1301 n. 1 (5th Cir. 1970).

Although we are unwilling to lay down a *per se* rule which would hold every form of misinformation as to plea consequences which indicated more rigorous consequences than the law would truly permit could never be considered in an attack on a guilty plea, we do now expressly overrule the prior panel holdings of this court in *Stephen* and *Grant*, *supra*. Isolating all other factors that could influence a defendant in determining to enter a plea of guilty, the court is of the opinion that even if Woodall had been told the district judge could pyramid the maximum sentences under each of the separate counts of the two indictments to which he pled, this factor would not invalidate his plea. The probability such information would have influenced Woodall *not* to change his plea so far outweighs the possibility that the prospect of stiffer punishment may have caused the change, that we refuse to consider the latter as relevant. It is apt to repeat the admonition of Mr. Justice Cardozo in Snyder v. Mass., 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), "There is danger that the criminal law will be brought into contempt * * * if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction * * * and set the guilty free." 291 U.S. at 122, 54 S.Ct. at 338.

In North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the Supreme Court has recently restated the basic test for determining the validity of guilty pleas: "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." We find no error in the determination of the district judge that that standard was met in Woodall's case. The panel determination dated May 18, 1970, as modified on rehearing is withdrawn. The judgment and commitment orders of the United States District Court for the Northern District of Alabama in CR 65–234–S and CR 65–238–S, dated the twenty-third day of February, 1966, are

Affirmed.

THORNBERRY, Circuit Judge:

I concur in Part I of the opinion. I concur only in that portion of Part II which is set out as the "second reason."

COLEMAN, Circuit Judge (concurring in part and dissenting in part).

For a reason altogether different from those assigned in the foregoing opinion of the Court *en banc,* I concur in the result.

I also concur in that part of the opinion which overrules Stephens v. United States and Grant v. United States. I am happy to see the Court correct the prior departures from Eakes v. United States.

I respectfully dissent from that part of the opinion which holds that the matter of privileged communications between attorney and client involves only a rule of evidence rather than a right inherently incident to the Constitutionally guaranteed right of counsel. I likewise dissent from that part of the opinion which holds that the privilege is

governed by federal rather than state law. Such a decision is in direct conflict with the decision of the Eighth Circuit in Love v. United States, 1967, 386 F.2d 260, cert. denied 390 U.S. 985.

I concur in the result because I believe that Tucker v. United States, which started this whole business, should, itself, be overruled. The *Tucker* panel, 409 F.2d at 1295, remanded Woodall's plea and directed a hearing in the District Court because *"The record fails to show* (emphasis mine) that he was informed, before he entered his pleas of guilty, as to the maximum penalties he was facing". Upon remand, the lower court was to determine whether "from the judge, his *lawyer* (emphasis mine), his bondsman, or from some other source", Woodall had been informed of the possible consequences of his plea.

The majority opinion points out that when Woodall withdrew his pleas of not guilty and entered the pleas of guilty he represented to the Court that he had consulted with his father and his attorney, that he had received no threats or promises, that there had been no plea bargaining, that he understood the charges to which he was pleading guilty, and was pleading guilty because he was indeed guilty of the crime charged.

It goes against all professional knowledge and experience, it smashes credulity to atoms, to assume on the mere silence of the record that Woodall, assisted by privately retained counsel of his own choice, pleaded guilty to two bank robberies without ever once inquiring about the possible consequences of what he was about to do. This was no hasty step. Woodall had first entered pleas of NOT GUILTY. Several months elapsed before the decision was made to withdraw from that position and to take a diametrically opposite course. Woodall is bound to have known that in so doing he was about to be subjected to a sentence within the limits of the law. In fact, he received far less

than the maximums provided by law. He knew very well that he was not about to be paraded to the public square, acclaimed as a hero, and tendered the grateful thanks of an applauding populace.

In my opinion, the mere silence of the record, in the total context of this case, offers no more excuse for voiding a plea of guilty than that rejected last week by the Supreme Court in Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524, 1971, as to an attack on the voluntary character of a confession.

These pleas were entered before the effective date of Rule 11, Federal Rules of Criminal Procedure, effective July 1, 1966. The mere *silence of the record,* in the absence of affirmative allegations by Woodall, was not enough fatally to infect the patently voluntary character of the pleas. I would so hold, and I would set aside the remand which *Tucker* ordered.

The prior panel could not do this. In the absence of an en banc court it had to follow the directions of the predecessor panel as the law of the case. I respectfully dissent from that part of the opinion which, I believe, unnecessarily casts a shadow upon a vital aspect of the Constitutional right of representation by counsel, i. e., privileged communications between attorney and client.

The majority holds that because Woodall attacked the guilty pleas he waived the privilege which attaches to communications occurring during the attorney and client relationship. Woodall did not say that his counsel was negligent, or incompetent, or had, in any respect, breached his professional duty. The *Tucker* opinion makes no mention of any such charge. Rather, the fatal flaw was *the silence of the record.* Obviously, privileged communications between attorney and client are not due to appear *in the record.*

The majority opinion says that Hunt v. Blackburn, decided by the Supreme Court in 1888, is precedent for deciding that Woodall waived the privilege. I must respectfully disagree. In that case,

Mrs. Blackburn alleged that she was *deceived, misadvised,* and *misled by her counsel* at a time when she was *ignorant of her rights.* At the same time, attempting to invoke the rule of privileged communication, she contended that her lawyer could not testify to give his version of the facts or defend himself. Of course, the Supreme Court rejected such an outrageous proposal. Speaking for the Court, Mr. Chief Justice Fuller wrote:

> "The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity in the interest and administration of justice of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure. But the privilege is that of the client alone, and no rule prohibits the latter from divulging his own secrets. And if the client has voluntarily waived the privilege, it cannot be insisted on to close the mouth of the attorney. When Mrs. Blackburn entered upon a line of defense which involved what transpired between herself and Mr. Weatherford, and respecting which she testified, she waived her right to object to his giving his own account of the matter." 9 S.Ct. at 127.

That language is as sound today as it was when the Chief Justice penned it over eighty years ago. But that is not the case now before us. Woodall makes no such allegations. The *Tucker* opinion cites no such accusations. The attack, quite obviously, was directed to a failure of the record to demonstrate that either the prosecutor or the trial judge informed the defendant of the possible penalties. For the reasons already stated, I would reject that argument.

But in no event would I use it to erode the privileged communications rule, so basic and so essential to the preservation of the Constitutionally guaranteed right of representation by counsel.

I now refer to an even more ancient case than Hunt v. Blackburn—Chirac v. Reinicker, 24 U.S. 280, 11 Wheat. 280, 6 L.Ed. 474 (1826) in which Mr. Justice Story, with the concurrence of Mr. Chief Justice Marshall and the other Justices, wrote:

> "The general rule is not disputed, that confidential communications between client and attorney, are not to be revealed, at any time. The privilege, indeed, is not that of the attorney, but of the client; and it is indispensable for the purposes of private justice. Whatever facts, therefore, are communicated by a client to counsel, solely on account of that relation, such counsel are not at liberty, even if they wish, to disclose; and the law holds their testimony incompetent." 24 U.S. at 292.

This language was cited with approval by the Supreme Court in Alexander v. United States, 138 U.S. 353, 11 S.Ct. 350, 34 L.Ed. 954 (1891).

Citing Chirac v. Reinicker, supra, the Sixth Circuit has recently held, "It is a general rule that confidential communications between an attorney and his client, made because of the professional relationship and concerning the subject matter of the attorney's employment, are privileged from disclosure, even for the purposes of the administration of justice", United States v. Goldfarb, 1964, 328 F.2d 280, cert. denied, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746.

Love v. United States, supra, was an appeal from a Dyer Act conviction. It was there held [Circuit Judges Vogel, Matthes, and Blackmun] that the trial court was bound by the law of the forum state on the question of privileged communications between attorney and client, 386 F.2d at 265.

The panel opinion discusses the Alabama statute and judicial precedents in this field. It was there made clear that the Alabama statute was but declaratory of the common law, hence there is no difference between the state statute and Rule 26, Federal Rules of Criminal Pro-

cedure, which provides that the admissibility of evidence and the privileges of witnesses shall be governed by the principles of common law as they may be interpreted by the courts of the United States in the light of reason and experience. Hence, even if the Federal Rules were controlling, the result should be the same. Therefore, I believe the declaration that Federal Rules control over state law is not necessary to the decision of the case and is *obiter dicta.* In any event, the rule is in conflict with the decision of the Eighth Circuit on the same subject and is silent as to the right of clients to depend upon the protection which is indispensably necessary to the preservation of the Constitutionally guaranteed right of representation by counsel.

The majority alludes to an affidavit in the record charging that Woodall's attorney assisted in the coercion of the guilty pleas. This does not appear to have been considered by the panel in Tucker v. United States, supra. I note that if this affidavit is of importance then it should necessitate a remand of the case for the resolution of the factual issues by the trial court, in which, of course, counsel would have a right to defend himself from such charges.

As already indicated, I concur in the result but respectfully dissent from that part of the majority opinion which holds that communications between Woodall and his lawyer were not entitled to the benefit of the privilege.

GOLDBERG, Circuit Judge (dissenting):

Without verjuice but in lonely dissent I record my soliloquy. I am unable to agree with the majority opinion in this case because I am in accord with the determination of my Brother Coleman that Woodall's conversations with his attorney were privileged and could not be exposed before the court below without his consent. We must be ever vigilant lest we invade the sacred precincts of the attorney-client privilege which, though sometimes inconvenient for the prose-

cutor, stands as a sentinel to protect our constitutional right to counsel.

However, unlike my Brother Coleman I would not overrule our prior opinion in Tucker v. United States, 5 Cir. 1969, 409 F.2d 1291, wherein we ordered the district court to determine whether Woodall had actual knowledge of the maximum penalty for the crime for which he was charged. I agree with the court's decision in that case holding that such knowledge must be affirmatively shown on the face of the record before a guilty plea may be sustained. This precept is as wise now as it was when enunciated and I would not sanction its change.

Since knowledge by Woodall of the maximum penalty is not shown on the record in the present case unless the testimony of Woodall's counsel is admitted, and I would not admit that testimony, I am back where I began, in agreement with my panel's original determination of this case, United States v. Woodall, 5 Cir. 1970, 438 F.2d 1317 as modified on petition for rehearing en banc [July 7, 1970]. I would therefore reverse.