Larry L. **BARTON**, Petitioner-Appellant,

v.

**UNITED STATES** of America,
Respondent-Appellee.

Edward H. **PARRY**, Petitioner-Appellant,

v.

**UNITED STATES** of America,
Respondent-Appellee.

No. 71–2507.

United States Court of Appeals,
Fifth Circuit.

March 31, 1972.

538

David E. Kenner, Van Nuys, Cal., for petitioner-appellants.

John L. Briggs, U. S. Atty., Kendell W. Wherry, Asst. U. S. Atty., Orlando, Fla., for respondent-appellee.

Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.

COLEMAN, Circuit Judge:

The denial of relief under 18 U.S.C., § 2255 will be affirmed.

On January 10, 1969, Edward H. Parry and Larry L. Barton were separately indicted (Barton in Case No. 69–5 and Parry in Case No. 69–6) for the robbery of the federally insured United National Bank of Cocoa Beach, Florida. Both appellants were charged in two counts with the violation of subsections (a) and (b) of 18 U.S.C., § 2113.[1]

---

1. § 2113. Bank robbery and incidental crimes.

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or posses-

At their arraignment, January 15, 1969, both men pled not guilty to all counts of the two-count indictments. Trial was set for February 17, 1969. Ten days prior to trial date both Parry and Barton again appeared before the Court, asking that they be allowed to change their pleas.

As to Barton the Court accepted a change of plea from "not guilty" to "guilty" as to Count One of the indictment. Count Two was dismissed upon the motion of the United States Attorney.

In Parry's case the Court accepted a change of plea on both counts from "not guilty" to "guilty".

In response to questions propounded *by the Court* at this proceeding, both Parry and Barton represented that they: (1) had discussed the nature of the proceedings with their attorneys, (2) had not been threatened, (3) had received no promises, (4) had never been addicted to narcotics, (5) knew exactly what they were doing, and (6) were pleading guilty because they were indeed guilty of the crimes with which they were charged.

These pleas, however, did not cover all of appellants' entanglements with the law. Both were also under federal indictments in the District of Maryland and in the Eastern District of Pennsylvania, charging them with violation of the federal bank robbery statutes, subsections (a), (b) and (c) of 18 U.S.C., § 2113. An information had also been filed in the Eastern District of New York charging them with violating subsections (a) and (d) of that same Code section. Pursuant to Rule 20 of the Federal Rules of Criminal Procedure, both Barton and Parry consented to have these cases transferred for plea and sentence from the named districts to the Middle District of Florida.[2]

On March 6, 1969, these appellants appeared before the Court for *arraignment* in the Rule 20 cases and for *sentencing in all cases*. Prosecution by indictment was waived in the case transferred from the Eastern District of New York. When asked by the Assistant United States Attorney as to their pleas, both appellants pled guilty to each count of the indictments filed in the cases transferred from the District of Maryland and from the Eastern District of Penn-

---

sion of, any bank, credit union, or any savings and loan association; or,

Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or

Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

\*        \*        \*        \*        \*

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

\*        \*        \*        \*        \*

2. The case transferred from the District of Maryland became Case No. 69–22; the case transferred from the Eastern District of New York because Case No. 69–23; and the case transferred from the Eastern District of Pennsylvania became Case No. 69–24.

sylvania, and to each count of the information filed in the case transferred from the Eastern District of New York.

Again, in response to questions asked by the Court both men stated that they: (1) had not been threatened, (2) had received no promises of anything, (3) were satisfied with the advice and representation of their attorneys, (4) had never been addicted to narcotics and were not at that time under the influence of any narcotic or sedative, and (5) were voluntarily pleading guilty because they were in fact guilty of the crimes with which they were charged.

After the acceptance of these guilty pleas, the appellants were given the maximum sentence allowable on each count of the various indictments. For example, in Case No. 69–23, the case transferred from the Eastern District of New York, the Court sentenced the appellants to twenty-five years imprisonment on Count One and to another twenty-five years imprisonment on Count Two. However, the sentences imposed in each indictment or information were to *run concurrently with all other sentences that were imposed.* Thus, the aggregate of all sentences was, subject to the parole eligibility provisions of the United States Code, imprisonment for a maximum of twenty-five years.

Subsequently, appellants filed a motion to vacate and set aside the judgments of conviction, 28 U.S.C., § 2255. In their motion, the appellants alleged that: (1) the guilty pleas in all cases, the consent to transfer of case for plea and sentence in Case Nos. 69–22, 69–23, and 69–24, and the waiver of indictment in Case No. 69–23 were neither voluntarily nor understandingly entered because they were incorrectly informed as to the maximum sentence which could be given them; (2) the subsections of 18 U.S.C., § 2113 did not create separate offenses, as a result of which a court is prohibited from imposing more than one sentence for the violations of these subsections; and (3) at the time of executing the consents to transfer in Cases numbered 69–22, 69–23, and 69–24, the

waiver of indictment in 69–23, and at the time of pleading guilty to one or more of the counts in each indictment, they were mentally incapacitated from prior prolonged use of the drug LSD.

After numerous delays, an evidentiary hearing was held on the § 2255 motion. The District Court agreed that the appellants should be resentenced in accordance with United States v. White, 5 Cir., 1971, 440 F.2d 978. Resentencing was scheduled for August 27, 1971. In all other respects Barton and Parry were denied § 2255 relief.

From this order the appellants have appealed and make the following Specifications of Error:

The sentencing Court did not comply with the mandate of Rule 11 in that: (1) the Court permitted Government counsel to address appellants personally as to the required determination that their pleas were made voluntarily with understanding of the nature of the charge, and to inform appellants of the consequences of such a plea; (2) the sentencing Court corroborated Government counsel's misinformation as to the consequences which could be imposed on pleas of guilty to the subsections of 18 U.S.C., § 2113; (3) the sentencing Court did not satisfy itself that there existed a factual basis for the pleas, and the reporter's transcript of said proceedings so reflects; and (4) the sentencing Court erred in its adjudication of Allegation "E" (the LSD allegation), as said allegation was not before the Court at time of evidentiary hearing, and the reporter's transcript of that proceeding so reflects.

I

■ Because the pleas here in issue were accepted prior to the decision of McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (April 2, 1969), the "automatic prejudice" rule of that case is of no avail to these appellants, Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969). However, pre-*Mc-*

*Carthy* pleas may be attacked as to voluntariness, and when it can be shown that a plea was not voluntarily and understandingly entered then such a plea will be invalidated.

The record reveals that the sentencing Court personally addressed each appellant in order to determine that his plea was made voluntarily and with an understanding of the nature of the charges. Both appellants answered the Court's questions unhesitatingly, placing no qualifications upon their answers. At all times, they behaved in a manner consistent with their guilty pleas and consistently with a full understanding of the charges. Even on appeal, they do not allege any lack of understanding of the charges at the time of their pleas. Moreover, the record reveals that the sentencing Court satisfied itself as to the existence of a factual basis for the appellants' pleas.

■ The sentencing Court did fail to achieve complete compliance with Rule 11 of the Federal Rules of Criminal Procedure by failing to inform the appellants of the maximum punishment which could be imposed upon them for violating the subsections of 18 U.S.C., § 2113 or, in other words, the consequences of their pleas.[3] As above indicated, such a failure does not result in the automatic invalidation of the appellants' guilty pleas. It does require a decision, however, as to whether such failure to inform the appellants of the consequences of their pleas and the effect of a subsequent statement by the sentencing Court destroyed the essential ingredient of voluntariness.

Assuming *arguendo,* as is contended, that appellants' court-appointed counsel

had previously told them that pyramided sentences could be imposed for violating the subsections of § 2113, it is argued that the sentencing Court's failure to inform the appellants of the consequences of their pleas may have caused them to enter such pleas under the misconception that the Court could actually impose such pyramided sentences. In fact, there is some evidence to indicate that the sentencing Court may have labored under this misconception, for immediately prior to imposing sentence, the Court informed appellants that they "could get up to about 140 years". The argument necessarily follows that such a statement could have reinforced the misconception caused by information received from counsel, not cured by failure of the Court specifically to inform the appellants of the consequences of the pleas.

We think that the effect of the Court's failure to inform the appellants of the consequences of their pleas, and the subsequent "140 year" statement, could only have caused them to believe that a harsher sentence awaited their pleas than that which could actually be imposed.

Prior to the en banc decision of this Court in United States v. Woodall, 5 Cir., 1971, 438 F.2d 1317, cert. denied, 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971), there was some conflict in this circuit as to the effect of such a belief, when produced by misinformation or by no information at all.[4] However, the decision in *Woodall* ended this conflict when it held that a defendant's belief that a district judge could pyramid the maximum sentences under each of the separate counts of several indictments would not invalidate the pleas. The probability that such a belief would

---

3. Although advised of the maximum possible sentence on each count of each indictment they faced prior to the time that their pleas of guilty were entered by the Assistant United States Attorney, the appellants were never told that the time to be served by one convicted of violations of § 2113(a) through (d) cannot be pyramided so as to exceed the maximum provided under the subsection providing the more

severe punishment. Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed. 2d 370 (1957).

4. See Eakes v. United States, 5 Cir., 1968, 391 F.2d 287; Stephen v. United States, 5 Cir., 1970, 426 F.2d 257; and Grant v. United States, 5 Cir., 1970, 424 F.2d 273.

encourage a defendant to plead "not guilty" outweighs the possibility that it might cause him to plead guilty.

We, therefore, follow our en banc decision in *Woodall,* supra, and reject this attack on the voluntary nature of the pleas.[5] See, also, Johnson v. Wainwright, 5 Cir., 1971, 456 F.2d 1200 [slip opinion dated February 25, 1972]. The law in this circuit was there very clearly summarized, as follows:

> "In Eakes v. United States [5 Cir., 1968, 391 F.2d 287] this court expressly held that a plea of guilty is not rendered involuntary merely because a defendant received a lesser sentence than either that which he was informed the district court could impose or the maximum sentence provided by law. This court followed *Eakes* in United States v. Woodall expressly overruling two prior decisions of the court which were in conflict. In *Woodall* the appellant sought to set aside his guilty plea alleging that he was misinformed that the sentences under each count of the indictment could be pyramided. Sitting en banc, this court held that even accepting *arguendo* Woodall's version of the facts, his claim was without merit. The court weighed the effect of the advice as to the harsher punishment on Woodall's decision and concluded that the likelihood that it would have no effect outweighed the possibility that the prospect of greater punishment would have caused a change in his plea. [438 F.2d at 1329]."

## II

Appellants also contend that the district court erred in its adjudication of the claimed mental incapacitation of the appellants, due to their alleged prior and prolonged use of LSD. Appellants contend that the allegation was not before the district court at the evidentiary hearing and therefore should not have been decided. We disagree. The contention is based upon the following statement of the district court made during the evidentiary hearing: "All right. As far as I am concerned then, Allegation "E" is not even before the Court". However, other colloquy immediately followed which explains the later adjudication of the matter:

> "MR. UNROT: That's correct, Your Honor. I am not going to argue it.

> "THE COURT: In any fashion until and unless there is some sworn statement that they were under the effect of LSD, and then and only then will I entertain it."

After one of the appellants, Edward H. Parry, had been called to the stand and had stated that he had drugs in his possession while in jail, the following colloquy took place:

> "MR. UNROT: Excuse me, Your Honor, may I inquire the purpose going into the issue of drugs?

> "THE COURT: Well it has been raised, and I want to get to the bottom of this.

> "MR. UNROT: I thought we were not going into the allegations of drugs at this time.

> "THE COURT: You didn't, but that does not preclude me.

> \*   \*   \*   \*   \*   \*

> "MR. UNROT: That's correct, Your Honor. I am not sure whether this is the appropriate time to go into it, sir. If the Court wishes to, I can.

> "THE COURT: The thing is we can have, as you are aware, the 2255 hearing without the necessity of the Petitioners being present now and this is the second time that they have been brought here.

5. Appellants' attempts to distinguish their case from *Woodall*, ignores the fact that the decision in *Woodall* expressly overruled a prior panel holding of this Court in Stephen v. United States, *supra*, which held that incorrectly severe sentence information given by the sentencing Court prevented a defendant from voluntarily and understandingly entering a guilty plea.

"MR. UNROT: I know, Your Honor.

"THE COURT: And I would like to, if possible, ascertain their position while they are here.

"MR. UNROT: I have no objection to that, Your Honor."

■■ There then followed extensive testimony concerning the appellants' alleged drug usage and dependence. The appellants, their trial counsel, and a nurse at the Orange County, Florida Jail testified concerning this allegation. Considering the testimony, along with the transcript of the arraignment, plea, and sentence proceedings, and giving due regard to the opportunity of the district court to judge the credibility of the witnesses, we must hold that the district court's finding that the appellants were not mentally incapacitated from the use of narcotics at the time they entered their pleas is not clearly erroneous. It should be noted that the appellants have not questioned the correctness of this determination. Their argument is that the issue was "not before the Court". The basic issue was the voluntariness of the pleas. Counsel stated he had no objection to going into the narcotics issue. This was followed by extensive evidence on the subject. Appellants had started out with a specific charge that they lacked capacity from narcotics. This issue should have been decided, it was decided, and we find no error.

The judgment of the district court is, in all respects,

Affirmed.

THORNBERRY, Circuit Judge (specially concurring):

I fully concur with the result reached in the instant case and with most of the reasoning employed by the majority. I am unable to agree, however, with any intimation that this Court's en banc decision in *Woodall* stands for the proposition that *in all cases* erroneous sentencing information is cured by the imposition of a sentence below the actual allowable maximum. This Court, in its recent opinion of Johnson v. Wainwright, 5th Cir. 1972, 456 F.2d 1200 [February 25, 1972], makes clear that the Court in *Woodall*

weighed the effect of the advice as to the harsher punishment on Woodall's decision and concluded that the likelihood that it would have no effect outweighed the possibility that the prospect of greater punishment would have caused a change in his plea.

At p. 1201. A similar weighing operation is necessary in each such case. The automatic reversal required under such circumstances by this Court's decisions in Stephen v. United States, 5th Cir. 1970, 426 F.2d 257, and Grant v. United States, 5th Cir. 1970, 424 F.2d 273, overruled by *Woodall*, was not, in my opinion, replaced by an automatic affirmance rule. Each individual case must be determined on its own facts, based on whether under all the circumstances the incorrect sentencing information had an effect *at the time of the plea* on the defendant's decision to plead guilty.

I have no trouble affirming petitioners' convictions here under this standard. They were told they could receive sentences totalling up to 140 years for their crimes. They could have in fact received sentences totalling almost 100 years. To any reasonable man, knowing his natural life span would not likely extend through either time period, this error could have made no difference in determining whether he would plead guilty or not. On this basis, I would affirm.