# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20039

United States Court of Appeals
Fifth Circuit

**FILED**
April 4, 2019

Lyle W. Cayce
Clerk

STEVEN RAY SCHILLEREFF,

> Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

> Respondent - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CV-1872

Before STEWART, Chief Judge, and DAVIS and ELROD, Circuit Judges.

PER CURIAM:*

## I. Facts & Procedural History

Steven Ray Schillereff ("Steven"), Texas prisoner #1202954, was charged with aggravated assault with a deadly weapon (his hands) after attacking his wife, Theresa Schillereff ("Theresa"), on May 3, 2003. In a letter to the sentencing court, Theresa recounted that the incident was sparked after she received a call from her mother that she was being subpoenaed to testify

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20039

against Steven for a previous incident of abuse. She stated that Steven told her that "we had to get our stories straight because he didn't want to go back to jail. He told me that if I would only just tell them that I was mistaken and I accidentally fell that it would keep him out of jail." Theresa stated that when she told Steven she "couldn't go up under oath and just lie," he became "very agitated," precipitating the attack. The Harris County Sheriff's Department offense report summarized the incident as follows:

> On May 3, 2003, Harris County Sheriff's deputies were dispatched to a disturbance in progress at 16955 1-10 East. Upon their arrival they observed a bloody female, later identified as Theresa Schillereff. She advised that she had been assaulted by her husband, Steven Ray Schillereff. They observed her eyes to be black and blue, and her entire face was swollen and bloody. She also had numerous nicks and cuts on her face and throat.
>
> Ms. Schillereff advised that earlier she had made a phone call to her mother in Vancouver, and was informed that the prosecutor's office there had sent her a subpoena regarding an assault case in which she was the complainant, and her husband [Steven] was the defendant. When she told her husband about the subpoena he got upset and stated, "That's it—you all are against me." He then threw his laptop computer on the floor, ripped the phone cord from the wall, and hit her five or six times in the face with a closed fist. She passed out, and when she came to, she saw her blood on the walls and ground, and felt it dripping from her face. She explained that she tried to leave several times but her husband sat naked on a chair in front of the door and wouldn't let her out of the room. She was finally able to escape when he went to the bathroom. She ran to the nearest pay phone outside the Citgo store and tried to call 911. Her husband had followed her so she tried to go into the store, but it was closed. She started banging on the door as her husband struck her seven or eight more times, causing further injury. The store clerk then called the police. Channelview E.M.S. received the call at 4:29 p.m., and arrived on the scene at 4:33 p.m. Ms. Schillereff was transported to East Houston Regional Medical Center, where she was treated for a broken nose, facial fractures, blurred vision, and head trauma . . . The defendant was charged

2

with Aggravated Assault and later arrested. He has continued to send letters to the complainant from jail.

Theresa stated that after the attack, she had to eat baby food for ten days due to her jaw injuries and the cuts inside of her mouth. She pled with the sentencing court to give Steven "the maximum sentence allowable."

The State filed a notice of its intent to use evidence of Steven's prior convictions and extraneous offenses at trial. The notice identified his 1985 Washington offenses of burglary and evading arrest. It also listed a February 2003 Washington offense of assault on Theresa.

On September 17, 2003, Steven pled guilty to aggravated assault with a deadly weapon. He filed a "Motion for Community Supervision," on which a box had been checked to indicate that he had been convicted of a felony but the lines indicating what type of felony and the date committed were left blank. He also signed an "Admonishments" form which stated that he was charged with aggravated assault and set forth the ranges of punishment if convicted. He initialed the paragraph for a second degree felony, which stated that he faced "a term of not more than 20 years or less than 2 years . . . and . . . a fine; if enhanced with one prior felony conviction, a term of life or any term of not more than 99 years or less than 5 years . . . and . . . a fine."

At the guilty plea hearing, the trial court stated that "[t]he range of punishment [for the offense of aggravated assault with a deadly weapon] is not less than 5 or more than 99 years of life . . . and a fine." The court ascertained that Steven understood the range of punishment and Steven replied that he did. The court then asked Steven "Are you pleading guilty because you are guilty and for no other reason?" Steven replied "Yes." The guilty plea was entered and the court explained that, after a presentence investigation, it would assess his punishment "somewhere within that range of punishment I just discussed with you."

No. 17-20039

Steven's presentence investigation report included the 1985 Washington burglary offense the State had identified but indicated that no charge had been filed for that offense. It also included his Washington offense for "Attempt to Elude," indicating its disposition was "1 year probation/Alcohol treatment/25 days in jail." The report further listed that, in addition to the 2003 Texas assault, Steven had pending charges in Washington for "2nd degree Assault on a Family Member" and for "Felony Harassment." It further detailed that Steven had assaulted Theresa using his hands, by choking her and striking her, on two occasions in February and March 2003.

On November 13, 2003, at the punishment hearing, the sentencing court began by stating that Steven had appeared before the court on September 17, 2003 and pled guilty to aggravated assault with a deadly weapon. The court recalled that "[a]t that period of time I went over the admonishments with you that were applicable to your case, went over with you the range of punishment, the consequences of your plea. You indicated you understood that at that time." The court recounted that he told Steven that "at the conclusion of a pre-sentence investigation hearing, after hearing all the evidence, that I would then assess your punishment somewhere within the range of punishment of 2 to 20 years. That I went over with you earlier." The court then solicited objections from both sides and there were none. The trial court sentenced Steven to 20 years of imprisonment for aggravated assault with a deadly weapon, a second degree felony. Steven's conviction was subsequently affirmed. *Schillereff v. State*, No. 14-03-01410-CR, 2005 WL 1552693, *1 (Tex. App. July 5, 2005) (unpublished).

On May 25, 2007, proceeding pro se, Steven filed the instant verified § 2254 petition. *See* 28 U.S.C. § 2254. He alleged that: (1) his retained counsel was not present when he pled guilty, (2) his guilty plea was involuntary, unknowing, and unintelligent because the trial court and trial counsel

4

incorrectly admonished him that he faced up to 99 years or life in prison when the correct range was 2 to 20 years, (3) his trial counsel was ineffective with respect to the plea and on numerous other grounds, (4) his appellate counsel rendered ineffective assistance, and (5) the statute under which he was convicted is unconstitutional.

The § 2254 proceedings were stayed so that Steven could exhaust his state remedies. In the state habeas proceedings, trial counsel Artiquewa "Art" Warren attested that he advised Steven that his punishment range was 2 to 20 years, "consistent with being charged with the second degree felony offense of Aggravated Assault of a Family Member." Counsel added that "[t]he court's admonishments provide for the condition that a person may be enhanced with a prior felony conviction," but that he recalled that Steven, he, and the court "were aware of and proceeded under the punishment range of two to twenty years." Counsel further explained that "[t]he applicant was eligible for community supervision because it was counsel's understanding after investigating the applicant's criminal history that he had not been previously convicted of a felony in the State of Texas or out of Washington."

The state habeas court credited Warren's affidavit. The court stated that, at the time of Steven's plea, the sentencing court incorrectly admonished him that his range of punishment was from 5 to 99 years or life in prison. The court then referenced the transcript of the subsequent punishment hearing and noted that at the start of the proceedings the sentencing court correctly advised Steven that his range of punishment was 2 to 20 years and that neither side objected. The court also found that based on Warren's affidavit, Warren had advised Steven that his punishment range was from 2 to 20 years in prison. Applying *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the state habeas court denied Steven's habeas application concluding that he had failed to show that counsel's performance was deficient and that, but for counsel's alleged

No. 17-20039

deficient conduct, there was a reasonable probability that the result of the proceeding would have been different.

The instant § 2254 petition was then reinstated. The respondent filed a motion for summary judgment arguing, among other things, that Steven had not overcome the presumption of correctness applied to the state habeas court's finding that he was adequately informed prior to his guilty plea of the nature of the charges against him and the possible range of punishment.  Steven filed a verified response asserting that counsel never advised him that the maximum sentence exposure was 20 years in prison. He argued that in light of the papers he signed before he pled guilty and the sentencing court's statements at the plea hearing that he faced a sentence of 5 to 99 years or life in prison, the state habeas court's fact finding on the voluntariness of his plea was unreasonable.

The district court granted summary judgment in favor of the respondent, finding that the sentencing court's initial admonishment was incorrect but that the plea papers Steven signed correctly stated that he faced a possible sentence of 2 to 20 years and he had initialed the form next to the correctly stated sentencing range. The district court concluded that Steven had not demonstrated that the state habeas court's finding that his trial counsel had correctly informed him of the sentencing range was an unreasonable determination of the facts. Thus, he had failed to demonstrate that his guilty plea was not knowing, voluntary, and intelligent. Steven filed this appeal.

On February 2, 2018, this court granted a COA on Steven's claims "that his guilty plea was not knowing and voluntary because (a) prior to entering his plea the trial court incorrectly stated the range of punishment he faced, and (b) counsel rendered ineffective assistance in failing to advise him before he pleaded guilty as to the correct range of punishment."

No. 17-20039

## II. Standard of Review

"We review 'the district court's findings of fact for clear error and its conclusions of law de novo, applying the same standard of review that the district court applied to the state court decision.'" *Ford v. Davis*, 910 F.3d 232, 234 (5th Cir. 2018) (quoting *Canales v. Stephens*, 765 F.3d 551, 562 (5th Cir. 2014)).

## III. Discussion

In his "Brief in Support of Appeal," Steven claims that he is entitled to § 2254(d) relief because his guilty plea was invalid and counsel was ineffective. He alleges that the sentencing court committed fraud when it stated at sentencing that it had previously admonished Steven that he faced 2 to 20 years of punishment, and that this fraud entitles him to relief under the doctrine of estoppel. Steven demands: (1) reversal and expungement of his conviction; (2) prompt, "comfortable and convenient" return to his family, but not "by bus," with all expenses paid; and (3) compensatory and punitive damages. We only have jurisdiction to address the two claims specified in the COA granted by this court in February 2018, *i.e.*, that Steven's guilty plea was invalid and that his counsel was ineffective in failing to advise him prior to his guilty plea. *See United States v. Daniels*, 588 F.3d 835, 836 n.1 (5th Cir. 2009); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997); *see also* 28 U.S.C. § 2253(c).

Under § 2254(d), a habeas application shall not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). This "difficult to meet . . . and highly deferential standard for evaluating state-court rulings . . . demands that state-court

decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). Thus, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. The state court's determination of a factual issue is presumed to be correct, and the petitioner must rebut the presumption by "clear and convincing evidence." § 2254(e)(1).

*A. Validity of Guilty Plea*

Steven argues that his guilty plea was not knowing and voluntary because the sentencing court told him he faced a minimum sentence of not less than 5 years and a maximum sentence of 99 years or life when the correct range was 2 to 20 years. He avers that the sentencing court's statement two months later at sentencing that he faced 2 to 20 years did not "dissipate the 'Taint.'" Steven claims that, had he known that his maximum exposure was 20 years of confinement rather than 99 years or life, he would have insisted on going to trial. He argues that the state court unreasonably determined the facts and the district court unreasonably concluded that the state habeas court's finding that he understood the applicable range was entitled to a presumption of correctness. He asserts that counsel told him just minutes before entering the courtroom to receive oral admonishments from the judge that he had a prior felony conviction in Washington and that the "Motion for Community Supervision" and the written "Admonishments" form which counsel had him sign demonstrate that counsel conveyed that he had a prior

felony and faced 5 to 99 years or life. He argues that the district court had a duty to determine whether the record supported the state habeas court's findings and that he has rebutted the presumption of correctness afforded to the state court's fact findings.

A guilty plea to a state criminal charge involves the waiver of a number of constitutional rights and must be entered both intelligently and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242–44 (1969); *Hall v. Maggio*, 697 F.2d 641, 643 (5th Cir. 1983). Before accepting a guilty plea, a trial court must ascertain that the defendant "has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244.

The record reflects that on the day of Steven's guilty plea hearing, he filed a "Motion for Community Supervision" where a box was checked indicating that he had been convicted of a prior felony but the blanks indicating what type of felony, in what state the felony took place, and the year of the felony, were all left blank. Counsel averred in the state habeas proceedings that "[t]he applicant was eligible for community supervision because it was counsel's understanding after investigating the applicant's criminal history that he had not been previously convicted of a felony in the State of Texas or out of Washington." The subsequent presentence report also indicated that Steven did not have a prior existing felony conviction at that time.

The record also reflects that, on the same day, Steven initialed an "Admonishments" form next to a paragraph that stated: "SECOND DEGREE FELONY: a term of not more than 20 years or less than 2 years in the Institutional Division of the Texas Department of Criminal Justice and in addition, a fine not to exceed $10,000.00 may be assessed; if enhanced with one prior felony conviction, a term of life or any term of not more than 99 years or less than 5 years . . . and . . . fine." At his plea hearing, the sentencing court told Steven that he faced a sentence of 5 to 99 years or life in prison and a fine.

No. 17-20039

There is no dispute that the trial court's admonition was incorrect and that the correct range of punishment for Steven's second degree felony conviction for aggravated assault with a deadly weapon was 2 to 20 years and a fine. *See* TEX. PENAL CODE §§ 12.33(a), 22.02(a)(2). In the state habeas proceedings, however, counsel attested that:

> With respect to the range of punishment counsel advised the applicant, I respond that I advised the applicant that his punishment range was from two to twenty years, consistent with being charge with the second degree felony offense of Aggravated Assault of a Family Member. The court's admonishments provide for the condition that a person may be enhanced with a prior felony conviction but it is counsel's recollection that the applicant, counsel, and the court were aware of and proceeded under the punishment range of two to twenty years.

In its 2016 memorandum and order, the district court noted that although the sentencing court incorrectly advised Steven that he faced a possible sentence of 5 to 99 years' imprisonment, the record revealed that the plea papers that Steven had signed the same day stated his correct sentence of 2 to 20 years. Additionally, the state habeas court determined that counsel had correctly informed Steven of the sentencing range based on the evidence before it. The state habeas court made the following factual finding:

> [Counsel] advised the applicant that his punishment range was from two to twenty years in prison. Further, [counsel]'s recollection is that all parties involved in the plea and sentencing were aware that the punishment range was two to twenty despite the court's admonishments of a possibility of the punishment range being enhanced if a prior conviction existed.

The state habeas court's above factual finding is entitled to a presumption of correctness which Steven has failed to overcome with clear and convincing evidence. *See Ford*, 910 F.3d at 234 ("A state court's factual findings are presumed to be correct, and the applicant bears the burden of rebutting that

presumption by clear and convincing evidence." (citing 28 U.S.C. § 2254(e)(1))). We have also acknowledged that "[t]his deference extends not only to express findings of fact, but to the implicit findings of the state court." *Id.* at 234–35 (quoting *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006)). As the respondent points out, in order for the state habeas court to find credible counsel's statement in his affidavit that he had advised Steven of the correct sentencing range, it had to make a determination that Steven was not credible, given his contrary assertions. We will not substitute our own credibility determination herein for that of the state courts. *See Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993) ("The habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact." (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)); *see also Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985) ("A federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts."). The record lends ample support to the district court's determination that "[Steven] does not demonstrate that the state habeas court's conclusion that he was properly informed of the possible sentence was an unreasonable determination of the facts."

Moreover, "[t]his court has consistently held that the critical question is not whether the court informed the defendant of the maximum sentence, but whether the defendant knew, in fact, the maximum he faced." *See Burton v. Terrell*, 576 F.3d 268, 271–72 (5th Cir. 2009) (noting that "this court's precedent is clear that the source of the defendant's actual knowledge is of no moment to the plea's constitutionality"); *see also Burdick v. Quarterman*, 504 F.3d 545, 548–49 (5th Cir. 2007) (upholding denial of federal habeas relief when defendant's trial counsel submitted an affidavit to the state habeas court attesting that he had explained the different ranges of punishment to the defendant and the state habeas court found the affidavit to be credible); *Cheely*

No. 17-20039

*v. United States*, 535 F.2d 934, 935–36 (5th Cir. 1976) (affirming denial of federal habeas relief in light of defense counsel's sworn testimony that he had informed the defendant of the plea's consequences). Further, this court has explained that "[e]ven if misinformed about the maximum possible sentence, the defendant's plea is not to be set aside as involuntary if he receives a sentence less than the law permitted or less than the defendant was informed that the court could impose." *Hill v. Estelle*, 653 F.2d 202, 205 (5th Cir. 1981); *see also United States v. Woodall*, 438 F.2d 1317, 1329 (5th Cir. 1970) ("[T]he court is of the opinion that even if [the defendant] had been told the district judge could pyramid the maximum sentences under each of the separate counts of the two indictments to which he pled, this factor would not invalidate his plea. The probability such information would have influenced [the defendant] not to change his plea so far outweighs the possibility that the prospect of stiffer punishment may have caused the change, that we refuse to consider the latter as relevant."); *Barton v. United States,* 458 F.2d 537, 541–42 (5th Cir. 1972) (affirming denial of federal habeas relief and rejecting attack on voluntary nature of the plea when sentencing court erroneously informed defendants that they "could get up to about 140 years"); *Eakes v. United States*, 391 F.2d 287, 288 (5th Cir. 1968) (holding that a guilty plea is not rendered involuntary merely because a defendant received a lesser sentence than either that which he was informed the district court could impose or the maximum sentence provided by law). Here, Steven's actual sentence of 20 years was considerably less than what the sentencing court stated could be imposed.

We uphold the district court's judgment denying federal habeas relief on Steven's claim that his guilty plea was not knowing and voluntary on grounds that the sentencing court incorrectly stated the range of punishment he faced. *See Harrington*, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could

disagree on the correctness of the state court's decision." (internal quotation marks and citation omitted)).

*B. Ineffective Assistance of Counsel*

Steven's second and final argument is that his guilty plea was invalid because counsel advised him that he had a prior felony conviction that would enhance his range of punishment. He contends that as a result of counsel's deficient performance, he was led to believe the sentencing court's incorrect oral admonishment that the range was 5 to 99 years or life in prison.

To demonstrate ineffective assistance, a petitioner must show that counsel's conduct was deficient and that it was prejudicial. *Strickland*, 466 U.S. at 687. When a defendant enters a guilty plea on advice of counsel, the voluntariness of the plea depends in part on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (internal quotation marks and citation omitted). Although misinforming a defendant as to his sentencing exposure can constitute deficient performance, "counsel's ineffectiveness is only a basis for vacating a conviction if there is a reasonable probability it made a difference to the outcome of the proceeding." *Young v. Spinner*, 873 F.3d 282, 285 (5th Cir. 2017). While the defendant can show prejudice by demonstrating a reasonable probability that but for counsel's deficiency, he would not have pled guilty but would have insisted on a trial, the Supreme Court has "warned against courts 'upset[ting] a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.'" *Id.* at 286 (alteration in original) (quoting *Lee v. United* States, 137 S. Ct. 1958, 1966–67 (2017)).

As we previously noted, the contemporaneous evidence available to the state habeas court revealed that Steven's counsel did advise him of the correct

sentencing range and that Steven was aware that he did not have a prior existing felony conviction at that time which could have been used to enhance his sentence. Steven's counsel attested in a sworn affidavit before the state habeas court that "[t]he applicant was eligible for community supervision because it was counsel's understanding after investigating the applicant's criminal history that he had not been previously convicted of a felony in the State of Texas or out of Washington." The subsequent presentence report supported counsel's statement that Steven did not have a prior existing felony at that time. Steven initialed the "Admonitions" form next to the correct range of two to twenty years. Counsel attested that he had advised Steven that the punishment range was from two to twenty years and that "[t]he court's admonishments provide for the condition that a person may be enhanced with a prior felony conviction but it is counsel's recollection that the applicant, counsel, and the court were aware of and proceeded under the punishment range of two to twenty years."

Prior to accepting his guilty plea, the sentencing court asked Steven "Are you pleading guilty because you are guilty and for no other reason?" and Steven replied "Yes." The state habeas court credited counsel's version of events and determined that he had correctly informed Steven of the sentencing range based on the evidence before it. We apply a presumption of correctness to that determination. *See Ford*, 910 F.3d at 234 (citing 28 U.S.C. § 2254(e)(1)). Steven's allegations to the contrary are not sufficient to overcome that presumption because they are contradicted by the record evidence. *See* § 2254(e)(1); *Young*, 873 F.3d at 285 (acknowledging that Supreme Court's guidance in *Lee* "clarify[ing] its standard for showing prejudice in the context of a guilty plea, emphasizing the need for a case-by-case examination of the totality of the evidence").

Steven has failed to show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687. Even if Steven was somehow able to show deficiency on these facts, we would nevertheless hold that he has failed to show prejudice given the evidence in the record that he was aware of the proper range of punishment when he entered his guilty plea. *Id.*

We uphold the district court's order denying federal habeas relief on Steven's claim that his counsel rendered ineffective assistance in failing to advise him as to the correct range of punishment. *See Harrington*, 562 U.S. at 101.

## IV. Conclusion

The district court's order denying habeas relief is AFFIRMED.