# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30516

United States Court of Appeals
Fifth Circuit

**FILED**
September 29, 2017

Lyle W. Cayce
Clerk

NICHOLAS LOYD YOUNG, SR.,

Petitioner - Appellant

v.

RICKY SPINNER, WARDEN, RIVER CORRECTIONAL CENTER,

Respondent - Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Nicholas Young pleaded guilty in state court to failure to register as a sex offender. Based on representations by his counsel, Young harbored a mistaken impression that by pleading he could receive a one-year sentence. But Young actually faced a sentence ranging from five to twenty years. La. Rev. Stat. § 15:542.1.4(A)(2). The trial court gave him twenty. After Louisiana courts denied Young's claim of ineffective assistance of counsel, he sought a writ of habeas corpus in federal court. Even though defense counsel was ineffective in his advice about the sentence, Young is unable to show that the state court's rejection of his claim was unreasonable because he has not shown he would have gone to trial had he known his true sentencing exposure. We therefore AFFIRM the denial of Young's petition.

No. 16-30516

## I.

Young pleaded guilty to failure to register as a sex offender after already having been convicted of the same offense. The new offense arose soon after Young's release from prison on his first failure-to-register offense. Young registered with the local sheriff's office the day after his release. But he failed to complete the registration process because he could not pay the required community notification fees.

At his plea hearing, Young voiced some confusion. He said his attorney had explained the minimum and maximum penalties associated with the charge. But at no time during that plea hearing did the trial court state the sentencing range for the charged offense, as would have been required in federal court. *See* FED. R. CRIM. P. 11(b)(1). Young also acknowledged there had been no promises made to induce him to plea. This acknowledgement, however, was not without ambiguity. When the trial court initially asked whether any promises had been made to induce him to enter a plea, Young responded—according to the court transcript—"PSI, and --." Young asserts, to the contrary, he said "Pre-Sentence Investigation plus one (1) year with no Multi-Bill," though that is not reflected in the transcript. After the trial court repeated the question, Young claims he responded "no" because he was intimidated, scared, and confused.

After the plea hearing but before sentencing, Young wrote to counsel, explaining he had understood he was to receive a one-year sentence but subsequently learned that under the statute he "face[d] a five (5) to twenty (20) year sentence at hard labor." The letter says Young "would not have plead[ed] guilty had [he] know[n] [he] could possibly be facing twenty (20) years in prison." Implicitly confirming prior representations to Young that he could receive a one year sentence, Young's counsel responded that if the judge found his violation to "be a mere technical matter, he will give his usual sentence of

2

one year." But, he noted, "[i]f the judge finds that the violation was more willful, he might be less generous." Counsel then stated that when he returned from vacation he would discuss the matter with Young. He also said that "if the judge's decision seems to be harsh, we can request permission to withdraw your plea. However, this will mean a trial, and a conviction would undoubtedly mean more time."

As Young's letter had recognized, counsel was wrong that one year was even a possibility. Under Louisiana law, a second conviction for failure to register is punished by prison "with hard labor for not less than five years nor more than twenty years." LA. REV. STAT. § 15:542.1.4(A)(2).[1]

Despite having learned about the twenty year maximum and his ability to ask the court to withdraw the plea, Young proceeded to sentencing without raising any of these issues with the judge. The trial court imposed the maximum of twenty years, citing Young's lengthy criminal history, which includes convictions for theft, driving while intoxicated, burglary, possession of a controlled substance, carnal knowledge of a juvenile, and failure to register as a sex offender. Although he objected to the sentence as "excessive," Young did not seek to withdraw his guilty plea at this point either. Young's challenge to his sentence on direct appeal was unsuccessful.

Young then sought postconviction relief in state court on the ground of ineffective assistance of counsel. Relying on Young's responses during his plea hearing, the trial court found he failed to demonstrate either that counsel was deficient or how the allegedly deficient performance prejudiced his defense by causing him to enter a guilty plea. The court did not mention the letters

---

[1] Not that it would excuse the incorrect advice, but the error cannot even be explained by confusion about the difference between the penalties for a first and subsequent offense. Even a first offense for failure to register requires a sentence of two to ten years. LA. REV. STAT. § 15:542.1.4(A)(1).

No. 16-30516

exchanged between Young and his counsel before sentencing. Louisiana appellate courts declined to review the trial court's judgment.

Young then filed his petition in federal court. The magistrate judge found that Young had a plausible claim as to deficient representation. But it concluded that Young could not meet the second requirement of a *Strickland* claim because he did not produce evidence showing his lack of guilt nor identify any affirmative defense he could have asserted at trial. All Young could point to in support of his argument that he would have gone to trial had he known the accurate sentencing range was a single conclusory statement. As a result, the magistrate found that Young could not overcome the prejudice aspect of the state court's rejection of his claim given the deference it is due on federal review. The district court concurred, denying Young's habeas petition. It did, however, grant a certificate of appealability, so we now review its decision.

## II.

Young must show that the Louisiana courts' rejection of his Sixth Amendment claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). That clearly established law for ineffective assistance claims is the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prove ineffective assistance, a petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. Because both *Strickland* and Section 2254(d) create deferential standards of review, when the "two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

Even viewed under this lens of double deference, there was no reasonable basis for Young's counsel to tell him there was a possibility of getting a one-year sentence when that sentence was not possible. The state court held that

4

Young failed to demonstrate how counsel's performance was deficient, in part because Young acknowledged during the plea hearing that counsel advised him of the minimum and maximum penalties associated with the charge. But the trial court did not state the sentencing range at the hearing, so there is nothing in the record to show that the information Young's counsel conveyed was correct. And the post-hearing correspondence between Young and his counsel shows he was told an incorrect sentencing range. Although counsel's promise was conditional—it assured Young that if the judge found his "failure to register [to] be a mere technical matter, he will give his usual sentence of one year"—the lowest possible sentence for this repeat offense was five years. It also appears counsel made similar statements to Young before the plea hearing because Young "understood that [he] was receiving a one (1) year sentence." Few things are more fundamental to the defense of a criminal case than knowing the defendant's sentencing exposure. By providing his client with a wrong answer to that basic question, counsel's performance fell below the standard the Sixth Amendment requires.

But counsel's ineffectiveness is only a basis for vacating a conviction if there is a reasonable probability it made a difference to the outcome of the proceeding. *Strickland*, 466 U.S. at 694. Because Young pleaded guilty, to show this prejudice he must demonstrate that but for counsel's error, he would have insisted on going to trial. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994); *see Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (applying, for the first time, *Strickland*'s standard "to challenges to guilty pleas based on ineffective assistance of counsel"). The Supreme Court recently clarified its standard for showing prejudice in the context of a guilty plea, emphasizing the need for a case-by-case examination of the totality of the evidence. *Lee v. United States*, 137 S. Ct. 1958, 1966 (2017). Although the Court declined to adopt an automatic rule denying prejudice claims when the defendant cannot mount a

5

viable defense, it warned against courts "upset[ting] a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."  *Id.* at 1966-67.

In *Lee*, the defendant—a lawful permanent resident—"adequately demonstrated a reasonable probability that he would have rejected" a plea for a drug offense "had he known that it would lead to mandatory deportation." *Id.* at 1962, 1967.  Deportation was the determinative issue in Lee's plea decision.  *Id.* at 1967.  Lee repeatedly asked his attorney whether he faced risk of deportation, and both Lee and his attorney later testified that he would have gone to trial but for counsel failing to apprise him of the immigration consequences of his plea.  *Id.* at 1967-68.  Moreover, during the plea colloquy, Lee was clearly confused about the immigration consequences of pleading guilty and only proceeded with the plea after being assured by counsel that the judge's admonition that a conviction could result in deportation was a "standard warning."  *Id.* at 1968.  Simply put, but for the "attorney's incompetence, Lee would have known that accepting the plea agreement would *certainly* lead to deportation.  Going to trial?  *Almost* certainly."  *Id.*  The "almost" proved critical because the benefits of avoiding deportation so far outweighed the burdens of "a year or two more of prison time" by risking a trial.  *Id.* at 1969.  That Lee would not have accepted a plea had he been properly informed, despite overwhelming evidence against him on the charged offense, was "backed by substantial and uncontroverted evidence."  *Id.*

Two other circuits have already applied *Lee* to cases in which the critical plea consideration was not deportation but the defendant's sentencing exposure.  In *United States v. Pola*, the defendant could not show prejudice on his claim that counsel overestimated the likelihood that the district court would impose a below guidelines sentence.  2017 WL 3098179, at *6, 8 (6th Cir.

July 21, 2017).  Pola's attorney had filed a motion at the plea hearing, stating that the parties contemplated a potential sentence of time served, though the government disavowed this assertion.  *Id.* at \*6.  But at the same hearing, Pola said he understood his plea exposed him to a maximum sentence of twenty years, claimed he studied the Sentencing Guidelines and "absolutely" understood them, and acknowledged the court was not bound by any agreement between the parties regarding what his sentence would be.  *Id.*  In light of the contemporaneous evidence, the court cast doubt on Pola's assertion that he would have insisted on his right to trial had he thought he would be sentenced to more than time served (nine months).  *Id.* at \*8.  Even if the government's evidence was "hardly insurmountable," a questionable assertion, "[b]y all appearances, there was nothing for Pola to gain and much to lose by insisting on a trial."  *Id.*

Similarly, in *Thompson v. United States*, the court rejected a defendant's ineffective assistance claim based on counsel's assertion that pleading would likely lead to a prison sentence of twelve years, as opposed to the life sentence the defendant ultimately received.  2017 WL 4125650, at \*4-5 (8th Cir. Sept. 19, 2017).   In light of that severe sentence, Thompson's after-the-fact assertions that he would have insisted on a trial absent counsel's deficient performance "ha[d] a ring of truth," but the contemporaneous evidence rebutted his claim.  *Id.* at \*4.  Although Thompson at times indicated an interest in pursuing a trial, he never moved to withdraw his guilty plea or indicated at sentencing that he anticipated a particular sentence.  *Id.*  In fact, when the district court explicitly told Thompson that the minimum sentence he would receive was twelve years "but that he could still be sentenced to a longer term," Thompson indicated he understood.  *Id.*

Young contends that had he reasonably believed he would be subject to a twenty-year sentence, he would not have pleaded guilty.  This assertion is

not completely without contemporaneous backing.  Three days after pleading guilty and over three months before sentencing, Young informed counsel "I would not have plead[ed] guilty had I know[n] I could possibly be facing twenty (20) years in prison."  And unlike Pola and Thompson, there is no indication Young knew his true sentencing exposure prior to pleading guilty.  Even though Young said his counsel explained the minimum and maximum potential sentences, nothing in the hearing transcript indicates that counsel advised him of the correct range.  At least for the minimum sentence, counsel's understanding was wrong.

But the evidence against Young for failure to register made his acquittal, and ability to show prejudice, exceedingly unlikely.  *See United States v. Kayode*, 777 F.3d 719, 726-27 (5th Cir. 2014) (finding that the "overwhelming evidence" on the charged offenses and lack of a viable defense other than Kayode's own sworn testimony "weighs against a finding of prejudice"); *Armstead*, 37 F.3d at 210 (concluding Armstead, "in light of the strong evidence against him"—including an eyewitness lineup identification and his fingerprints being found at the crime scene—had not shown "there is a reasonable probability that he would not have plead[ed] guilty").  *Contrast Spriggs v. United States*, 2017 WL 3411796, at *3-4 (11th Cir. Aug. 9, 2017) (per curiam) (finding possible prejudice when counsel did not pursue Fourth Amendment violations despite defendant's claims of innocence and when a motion to suppress may have been dispositive).  Although he did register as a sex offender with local police, Young did not fulfill the community notification requirement.  The lack of any defense to the charge means that Young still had a strong incentive to plead guilty even with a sentencing range of five to twenty years.  Although circumstances ultimately did not bear this out, at the time of pleading Young had little to gain and much potentially to lose—not being able to argue that his acceptance of responsibility warranted leniency—by insisting

on a trial. *See Kayode*, 777 F.3d at 726 (acknowledging "the risks faced by a defendant in selecting a trial rather than a plea bargain," such as facing conviction on more counts and a "much higher sentence"); *United States v. Fuller*, 769 F.2d 1095, 1098 (5th Cir. 1985) ("A defendant, faced with the possibility of fifteen years in prison, might well take a desperate gamble for clemency by pleading guilty as charged."). And counsel was correct that the nature of Young's offense—he did not completely ignore the reporting requirement but was just unable to pay the community notification fee— supported relying on acceptance of responsibility to try and minimize the sentence. Finally and importantly, Young did not seek to withdraw his plea before the sentencing hearing even though by that time he realized he faced a potential sentence of twenty years and had been told by counsel that seeking withdrawal was an option. *See Thompson*, 2017 WL 4125650, at *4 (noting this is a factor that counsels against a finding of prejudice).

As opposed to Lee, who could point to substantial contemporaneous evidence that he would have risked a trial absent his attorney's error, Young relies largely on hindsight. And while Lee was willing to risk additional time in prison in order to avoid the calamity of deportation, Young had only one major interest: minimizing his sentence. Pleading guilty usually does reduce the length of a defendant's sentence. It ended up not achieving that goal for Young, so in retrospect his contention that he would have gone to trial "has a ring of truth." But at the time he pleaded guilty, Young could not have known that the trial court would show no leniency. At that time, Young could maximize his chance of receiving a more lenient sentence by pleading guilty, rather than risking a trial for which he has identified no plausible defense.

There is one more difference between this case and *Lee,* and it is a significant one. Lee was convicted in federal court, so his ineffective assistance claim was being reviewed by a federal court in the first instance. *See* 28 U.S.C.

§ 2255. Young was convicted in state court, so we are deciding only whether the state court unreasonably applied the *Strickland* standard in finding no prejudice. *See* 28 U.S.C. § 2254(d)(1). Even if Young has a plausible argument that he would have gone to trial had he known a one-year sentence was impossible, that does not establish that the state court's contrary conclusion was unreasonable. For the reasons we have discussed, it was not.

**\* \* \***

The judgement of the district court is AFFIRMED.