******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ALISON BARLOW *v.* COMMISSIONER
OF CORRECTION
(SC 20591)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

The petitioner, who had been convicted of attempt to commit murder, among
other crimes, sought a writ of habeas corpus, claiming that his trial
counsel, M, had provided ineffective assistance during pretrial plea nego-
tiations. During those negotiations, the trial court offered the petitioner
a plea deal of fifteen years of incarceration, execution suspended after
nine years, but the petitioner, who had indicated his preference for a six
year sentence, rejected that offer. After a jury trial, at which substantial
evidence was presented in support of the petitioner's conviction, the
petitioner was convicted and sentenced to thirty-five years of incarcera-
tion. At the petitioner's first habeas trial, the court rejected the petition-
er's ineffective assistance claim, but the Appellate Court reversed the
habeas court's judgment, concluding that M's performance was deficient
insofar as she did not adequately advise the petitioner regarding the
trial court's nine year plea offer. The Appellate Court remanded the
case for a new habeas trial on the issue of whether the petitioner had
been prejudiced by M's deficient performance. After that new trial, the
habeas court, crediting the petitioner's testimony at the new habeas
trial, as well as the testimony of a legal expert regarding the advice
reasonably competent counsel would have provided, found that the
petitioner likely would have accepted the nine year offer if M had ade-
quately advised him and thus concluded that the petitioner met his
burden of establishing prejudice. Accordingly, the habeas court rendered
judgment granting the petition. On the granting of certification, the
respondent, the Commissioner of Correction, appealed. *Held* that the
habeas court correctly determined that the petitioner had met his burden
of establishing prejudice as a result of M's ineffective assistance: the
habeas court's finding that the petitioner likely would have accepted
the trial court's nine year plea offer if M had adequately advised him
was supported by the record in view of the petitioner's testimony at
the habeas trial, the strength of the state's criminal case against the
petitioner, his apparent willingness to plead guilty, the generosity of
the plea offer in comparison to the thirty-five year sentence ultimately
imposed, and the relatively minor difference in prison time between the
plea offer and the petitioner's counterproposal; moreover, this court
rejected the respondent's claim that the habeas court had improperly
relied on the Appellate Court's conclusion that M's performance was
deficient, as the Appellate Court's decision, which was issued nearly
eight years beforehand, constituted a final determination of the legal
issues presented on appeal, including the issue of whether M's perfor-
mance was deficient, and, because the respondent never sought certifica-
tion to appeal from the Appellate Court's judgment, the respondent
could not relitigate the legal issues decided by that court; furthermore,
the record contained sufficient contemporaneous evidence from the
time of the underlying plea negotiations to substantiate the petitioner's
after-the-fact testimony that he would have accepted the plea offer but
for M's deficient performance.

Argued November 19, 2021—officially released May 17, 2022

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Sferrazza, J.*; judgment
dismissing the first count of the petition and denying
the second count of the petition, from which the peti-
tioner, on the granting of certification, appealed to the

Appellate Court, *Beach*, *Bear* and *Sheldon*, *Js.*, which reversed in part the judgment of the habeas court and remanded the case for further proceedings; thereafter, the court, *Sferrazza*, *J.*, denied the petition and rendered judgment thereon, from which the petitioner, on the granting of certification, appealed to the Appellate Court, *Beach*, *Keller* and *West*, *Js.*, which reversed the judgment of the habeas court and remanded the case for further proceedings, and the respondent, on the granting of certification, appealed to this court, which dismissed the appeal; subsequently, the case on remand was tried to the court, *Bhatt*, *J.*; judgment granting the petition for a writ of habeas corpus, from which the respondent, on the granting of certification, appealed. *Affirmed.*

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Maureen T. Platt*, state's attorney, and *Eva Lenczewski*, former supervisory assistant state's attorney, for the appellant (respondent).

*Naomi T. Fetterman*, assigned counsel, for the appellee (petitioner).

*Opinion*

ECKER, J. The habeas court granted the petition for a writ of habeas corpus filed by the petitioner, Alison Barlow, after determining that the petitioner had suffered prejudice as a result of the ineffective assistance rendered by his trial counsel, who failed to provide the petitioner with professional advice and assistance during pretrial plea negotiations. The respondent, the Commissioner of Correction, appeals from the judgment of the habeas court, claiming that the habeas court improperly found that it was reasonably probable that the petitioner would have accepted the trial court's pretrial plea offer but for the ineffective assistance of his trial counsel. We affirm the judgment of the habeas court.

The record reveals the following relevant facts and procedural history. In 1997, the petitioner was charged with attempt to commit murder in violation of General Statutes (Rev. to 1997) § 53a-54a and General Statutes § 53a-49 (a) (2), conspiracy to commit murder in violation of General Statutes (Rev. to 1997) § 53a-54a and General Statutes § 53a-48 (a), two counts of assault in the first degree in violation of General Statutes (Rev. to 1997) § 53a-59 (a) (1), and alteration of a firearm identification number in violation of General Statutes (Rev. to 1997) § 29-36. Prior to trial, the state offered the petitioner a plea deal of eighteen years of incarceration, execution suspended after fourteen years. The trial court, *Damiani*, *J.*, offered the petitioner a plea deal of fifteen years of incarceration, execution suspended after nine years. On April 21, 1997, the trial court conducted a brief, on-the-record proceeding, at which it memorialized the state's offer, the trial court's offer, and the petitioner's preference for "something after six years." The court also informed the petitioner at that time that the plea deal was available for one day only, after which his case would be placed on the trial list. The petitioner did not accept the trial court's pretrial plea offer.

The petitioner subsequently asked his trial counsel to negotiate a plea deal that would require him to serve only six or seven years of incarceration. In the meantime, notwithstanding the initial characterization of the trial court's plea deal as a one day only offer, the offer of nine years to serve remained in effect for approximately one year, until the start of trial. Prior to the start of trial, Judge Damiani repeatedly asked trial counsel if the petitioner intended to accept the court's offer and plead guilty, but the petitioner did not accept the nine year offer.

During the petitioner's criminal trial, the jury was presented with substantial evidence to support a conviction. Demetrice Chapman, the petitioner's girlfriend, and Kyle Dunn, the petitioner's friend, gave statements

to the police indicating that the petitioner was in the car involved in the drive-by shooting of the victim. The state's forensic expert testified that the shell casings found at the scene of the crime matched the pistol discovered in the petitioner's car. Furthermore, as accurately described by the habeas court, "[the petitioner's] codefendants, Miguel Torres and Jose Rodriguez, gave statements to the police implicating themselves and [the petitioner]. These statements were internally consistent and also consistent with the physical evidence and the state's theory of the case. . . . Both [codefendants] cooperated with the prosecution in [the petitioner's] case but ultimately were not called to testify at [his] trial." The jury found the petitioner guilty of the crimes charged, and the trial court, *Gill, J.*, sentenced him to thirty-five years of incarceration. The Appellate Court affirmed the petitioner's judgment of conviction. See *State* v. *Barlow*, 70 Conn. App. 232, 249, 797 A.2d 605, cert. denied, 261 Conn. 929, 806 A.2d 1067 (2002).

The petitioner filed two unsuccessful habeas petitions. At issue in the present appeal is the petitioner's third habeas petition, which alleges that his trial counsel—then Attorney, now Judge, Sheridan L. Moore—rendered ineffective assistance in connection with the pretrial plea negotiations.

The habeas court, *Sferrazza, J.*, held a trial on the petitioner's third habeas petition, at which trial counsel testified that she refrained from giving the petitioner any advice regarding the trial court's pretrial plea offer. Trial counsel stated that her practice was to inform defendants about the facts of the offer but not to recommend a specific course of action or to assist a petitioner in weighing the options. Trial counsel could not recall whether the petitioner ever told her directly that he would not accept a plea offer, but she explained that she would not have gone to trial unless the petitioner had rejected the trial court's offer. The petitioner testified that trial counsel did not advise him of the risks and benefits of accepting any of the plea bargain offers, the strengths and weaknesses of the state's case, or any potential defense strategies. He also testified that he would have pleaded guilty and accepted the trial court's offer instead of going to trial if his trial counsel had advised him that his six year counterproposal was not reasonable.

Judge Sferrazza dismissed in part and denied in part the petition after finding that trial counsel's advice did not amount to ineffective assistance of counsel. The Appellate Court reversed in part the judgment of the habeas court, concluding that trial counsel's "performance was deficient because she did not give the petitioner her professional advice and assistance concerning, and her evaluation of, the trial court's plea offer." *Barlow* v. *Commissioner of Correction*, 150 Conn. App. 781, 802, 93 A.3d 165 (2014). Because the habeas court

made no findings concerning prejudice under the second prong of *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Appellate Court remanded the case to the habeas court "to determine whether it is reasonably likely that the petitioner would have accepted the [plea] offer had he received adequate advice from [trial counsel]." *Barlow* v. *Commissioner of Correction*, supra, 804.

On remand, Judge Sferrazza did not conduct an evidentiary hearing but, instead, concluded, on the basis of the evidence adduced at the prior habeas trial, that the petitioner had failed to prove prejudice. On the granting of certification, the petitioner appealed to the Appellate Court, which reversed the judgment of the habeas court on the grounds that Judge Sferrazza was statutorily prohibited from trying the case on remand following reversal and that a new habeas trial before a different judge was required. See *Barlow* v. *Commissioner of Correction*, 166 Conn. App. 408, 421, 431, 142 A.3d 290 (2016), appeal dismissed, 328 Conn. 610, 182 A.3d 78 (2018).

Judge Bhatt presided over the new habeas trial on the issue of prejudice. The evidence presented at this trial included the transcript of the first habeas trial before Judge Sferrazza, the testimony of a legal expert, Attorney Brian Carlow, and the testimony of the petitioner. Carlow testified that competent counsel would have advised the petitioner that the case against him was strong and that the trial court's offer of nine years of incarceration was extremely favorable given the lack of any viable defense and the petitioner's criminal record. According to Carlow, trial counsel should have provided the petitioner with additional context to explain to him that an offer of "six or seven [years was] not on the table," that "Judge Damiani had settled in on nine years," and that, "[u]nless something new, unless something could be shown to him that he didn't already know, he was not going to reduce that nine years." Additionally, Carlow opined that trial counsel should have explained to the petitioner that, if he proceeded to trial, he ran "an exceedingly strong risk of [being sentenced to] multiples of those nine years," for example, "a sentence in the thirties or worse." Judge Bhatt determined that Carlow testified credibly about the advice a reasonably competent criminal defense attorney would have given a defendant in the petitioner's position. Judge Bhatt also found that "[a]t no time did trial counsel tell [the petitioner] that his proposal for six or seven years' incarceration was not going to be accepted by the court, [or] that, in light of all the evidence the state possessed, the offer of nine years was a favorable offer. . . . As trial counsel testified, and the Appellate Court determined, trial counsel provided no assistance, advice or guidance to [the petitioner] regarding his likelihood of success at trial or the likely potential sentence he faced if he [would have gone] to trial and whether accepting the

court indicated sentence [would have been] in his best interest." (Citation omitted.)

With respect to the petitioner's testimony, Judge Bhatt found that the petitioner "testified credibly that, had counsel discussed the strengths and weaknesses of the case against him and given him advice concerning the reasonableness of the nine year offer, he would have accepted it. Had he been advised that his six year counterproposal was not feasible and that the court's offer was reasonable, he would have accepted the court's offer." Judge Bhatt further credited the petitioner's testimony that, if trial counsel had informed him that his codefendants' statements to the police could be introduced as substantive evidence and used against him, "he would have realized the inevitability of his conviction and accepted the nine year offer." Accordingly, Judge Bhatt concluded that the petitioner had been prejudiced by the ineffective assistance rendered by trial counsel because there was a reasonable probability that the petitioner "would have accepted the court indicated sentence of nine years had he been adequately advised by trial counsel and [because] Judge Damiani would have accepted the plea." Judge Bhatt granted the petitioner's petition for a writ of habeas corpus and returned the case to the trial court for a determination of the appropriate remedy.

The respondent filed a petition for certification to appeal, which the habeas court granted. Thereafter, the respondent appealed from the judgment of the habeas court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the respondent argues that the habeas court erred in "uncritically accepting" the Appellate Court's determination that trial counsel had rendered ineffective assistance and in failing to give prominence to contemporaneous evidence "that revealed that, even in the absence of [trial counsel's] explicit advice, there were other ways the petitioner was apprised of information that enabled him, on his own, to make an informed judgment about what plea to enter." The petitioner responds that the habeas court properly found that, but for trial counsel's deficient performance, it is reasonably probable that the petitioner would have accepted the trial court's plea offer. We agree with the petitioner.

"Under the sixth amendment to the United States constitution, a criminal defendant is guaranteed the right to the effective assistance of counsel." *Skakel* v. *Commissioner of Correction*, 329 Conn. 1, 29, 188 A.3d 1 (2018), cert. denied,     U.S.    , 139 S. Ct. 788, 202 L. Ed. 2d 569 (2019). "Given the centrality of plea bargaining to the efficient administration of the criminal justice system, defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that

the [s]ixth [a]mendment [to the United States constitution] requires in the criminal process at critical stages. Because ours is for the most part a system of pleas, not a system of trials . . . it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process. . . . In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant." (Citations omitted; internal quotation marks omitted.) *Moore* v. *Commissioner of Correction*, 338 Conn. 330, 339–40, 258 A.3d 40 (2021). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test set forth in *Strickland* v. *Washington*, supra, 466 U.S. 687, by "demonstrating that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Internal quotation marks omitted.) *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 101, 111 A.3d 829 (2015).

The sole issue in the present appeal is the whether the petitioner satisfied his burden of establishing prejudice under the second prong of *Strickland*. "[T]o satisfy the prejudice prong of the *Strickland* test when the ineffective advice of counsel has led a defendant to reject a plea offer, the habeas petitioner 'must show [1] that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [2] that the court would have accepted its terms, and [3] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.' " *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 352, 53 A.3d 983 (2012) (quoting *Lafler* v. *Cooper*, 566 U.S. 156, 164, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012)), cert. denied sub nom. *Arnone* v. *Ebron*, 569 U.S. 913, 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013). These factors focus "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process"; *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); and the ultimate conviction or sentence imposed. See *Missouri* v. *Frye*, 566 U.S. 134, 147, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) ("[t]o show prejudice from ineffective assistance of counsel [when] a plea offer has lapsed or been rejected because of counsel's deficient performance . . . it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time").

The ultimate question of whether a habeas petitioner's sixth amendment rights have been violated "is a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 265, 112 A.3d 1 (2015); see *Strickland* v. *Washington*, supra, 466 U.S. 698 ("[the] prejudice [component] of the ineffectiveness inquiry [is a] mixed [question] of law and fact"). In the context of rejected plea offers, however, the specific underlying question of whether there was a reasonable probability that a habeas petitioner would have accepted a plea offer but for the deficient performance of counsel is one of fact, which will not be disturbed on appeal unless clearly erroneous. See, e.g., *United States* v. *Grammas*, 376 F.3d 433, 438 (5th Cir. 2004) ("Whether it is reasonably probable that [the petitioner's] decision to plead guilty would have been different had he been properly counseled as to his potential punishment is a question of fact. Such a determination should be left to the [habeas] court."); *Cullen* v. *United States*, 194 F.3d 401, 405 (2d Cir. 1999) ("the determination of the likelihood that [the petitioner] would have accepted the plea bargain if he had been fully informed of its terms and accurately advised of the likely sentencing ranges under the plea bargain and upon conviction after trial was, like all predictions of what might have been, a factual issue, albeit a hypothetical one"); see also *Ebron* v. *Commissioner of Correction*, supra, 307 Conn. 351 ("[t]he habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous" (internal quotation marks omitted)).

With the foregoing principles in mind, we address whether the habeas court's factual finding that the petitioner likely "would have accepted the court indicated sentence of nine years had he been adequately advised by trial counsel" was clearly erroneous. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the [habeas] court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the [habeas] court's ruling." (Internal quotation marks omitted.) *Dickinson* v. *Mullaney*, 284 Conn. 673, 678, 937 A.2d 667 (2007). The habeas court had the opportunity to observe firsthand the "conduct, demeanor and attitude" of the witnesses,

and, therefore, it "is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Taylor* v. *Commissioner of Correction*, 324 Conn. 631, 643–44, 153 A.3d 1264 (2017).

At the habeas trial, the petitioner testified that, if his trial counsel had rendered effective assistance by discussing the strengths and weaknesses of the state's case against him, the reasonableness of the trial court's nine year offer, and the unreasonableness of his six year counterproposal, he would have accepted the trial court's plea offer. The habeas court found the petitioner's testimony to be credible. The habeas court pointed out that the petitioner "had a criminal record and had been previously incarcerated, so avoiding further convictions or having to be incarcerated again was not a factor in determining whether to accept or reject an offer." Additionally, acceptance of the trial court's plea offer "would have been the rational course of action" because "[t]he evidence against [the petitioner] was substantial, and there was a strong possibility that he would be convicted after trial and receive a sentence significantly [harsher] than that contemplated by either the state's offer or the court indicated sentence." The petitioner's position during plea negotiations "demonstrated that he was willing to plead guilty and [to] accept responsibility in exchange for an agreeable sentence," and the difference between the trial court's nine year offer and the petitioner's six year counterproposal was "hardly a wide gulf . . . especially in light of the significant exposure in excess of eighty-five years faced by [the petitioner]." The habeas court was "convinced that had [the petitioner] been advised as he was entitled to be, he would have bridged that gulf" and accepted the trial court's plea offer.

The habeas court issued a thorough memorandum of decision, and we may "presume that the [habeas] court acted properly and considered all the evidence." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 690, 51 A.3d 948 (2012); see *Sanchez* v. *Commissioner of Correction*, 314 Conn. 585, 611 n.16, 103 A.3d 954 (2014) ("we . . . may presume, in the absence of any indication to the contrary, that the court considered all of the evidence when assessing [a witness'] credibility"). Although there was conflicting evidence in the record; see footnote 3 of this opinion; the habeas court, as the trier of fact, was "the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . [When] there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine." (Citation omitted; internal quotation marks omitted.) *State* v. *James*, 237 Conn. 390, 407, 678 A.2d 1338 (1996); see *Cruz* v. *Commissioner of Correction*, 206 Conn. App. 17, 26, 257 A.3d 399 ("[a]lthough

the petitioner testified that he would have gone to trial but for [trial counsel's] advice, the habeas court, as the sole arbiter of the credibility of witnesses and the weight to be given to their testimony, was entitled to reject his testimony in light of the other evidence presented during trial"), cert. denied, 340 Conn. 913, 265 A.3d 926 (2021); *Lebron* v. *Commissioner of Correction*, 204 Conn. App. 44, 53, 250 A.3d 44 (petitioner failed to prove prejudice in part because "the court clearly did not credit the petitioner's testimony that he would not have pleaded guilty had he been advised properly [by trial counsel]"), cert. denied, 336 Conn. 948, 250 A.3d 695 (2021). In light of the petitioner's testimony, the strength of the state's case, the petitioner's apparent willingness to plead guilty, the generosity of the plea offer in comparison to the thirty-five year sentence ultimately imposed, and the relatively minor difference between the trial court's plea offer and the petitioner's counterproposal, we cannot conclude that the habeas court's factual finding that the petitioner likely would have accepted the plea but for the ineffective assistance of his trial counsel is unsupported by the record or clearly mistaken.

The respondent argues that the habeas court's factual finding is flawed in two respects. First, the respondent contends that the habeas court improperly relied on the Appellate Court's legal conclusion that trial counsel rendered deficient performance, arguing that *Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 781, was wrongly decided and that he "has not yet been able to contest [the Appellate Court's] deficient performance determination" due to "the absence of a final judgment." Second, the respondent contends that the habeas court failed to comply with the dictates of *Lee* v. *United States*, U.S. , 137 S. Ct. 1958, 1967, 198 L. Ed. 2d 476 (2017), which requires that "post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" must be substantiated by "contemporaneous evidence," meaning evidence from the time of the underlying plea negotiations, to support the petitioner's after-the-fact testimony. Both arguments lack merit.

The Appellate Court's decision in *Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 781, was issued nearly eight years ago, in 2014. The respondent never filed a petition for certification to appeal from the Appellate Court's judgment seeking review of the Appellate Court's legal conclusion that trial counsel's performance was deficient. See General Statutes § 51-197f; Practice Book § 84-1.[1] As we explained in *In re Judicial Inquiry No. 2005-02*, 293 Conn. 247, 977 A.2d 166 (2009), there is a distinction between the final judgment of a trial court and the final determination of an appeal by the Appellate Court under § 51-197f. Specifically, " 'the final determination of an appeal rule looks at the finality of the appeal, not at the finality of the

underlying judgment. Thus, even though a remand by the Appellate Court may vitiate the finality of the trial court's judgment, the appeal to the Appellate Court has been finally determined because that court has completed its work.' " Id., 256, quoting C. Tait & E. Prescott, Connecticut Appellate Practice and Procedure (3d Ed. 2000) § 7.2, p. 265; see *Gold* v. *East Haddam*, 290 Conn. 668, 676, 966 A.2d 684 (2009) (holding that Appellate Court's reversal of trial court's grant of summary judgment and remand for further proceedings "was a final determination of the appeal" under § 51-197f). A "final determination exists . . . under § 51-197f . . . once the Appellate Court conclusively resolves the issue or issues before it and disposes of the cause such that no further action is necessary on *its* part. In other words, the critical factor . . . is whether the decision of the *Appellate Court* represents a final determination." (Emphasis in original.) *In re Judicial Inquiry No. 2005-02*, supra, 257.

Our review of the appellate record reveals that the Appellate Court's judgment in *Barlow* v. *Commissioner of Correction*, supra, 150 Conn. App. 781, was a final determination of the legal issues presented on appeal, including, in particular, the issue of deficient performance. Although the Appellate Court reversed the judgment of the habeas court and remanded the case to that court for further proceedings on the issue of prejudice, the Appellate Court had completed its work in connection with the legal issues raised at that time, the appeal was terminated, and "[n]othing further remained for the Appellate Court to do." *In re Judicial Inquiry No. 2005-02*, supra, 293 Conn. 257. Because the respondent failed to file a timely petition for certification to appeal from the Appellate Court's judgment, we reject the respondent's attempt to relitigate the legal issues decided by the Appellate Court.[2]

The respondent next claims that the habeas court failed to incorporate sufficient contemporaneous evidence into its prejudice analysis, in contravention of the holding of the United States Supreme Court in *Lee* v. *United States*, supra, 137 S. Ct. 1967. The respondent acknowledges that the habeas court properly considered some contemporaneous evidence, such as the generosity of the plea offer and the strength of the state's case, but argues that conflicting contemporaneous evidence "predominates over [the habeas court's] 'post hoc' credibility determination . . . ."[3] The petitioner responds that *Lee*'s contemporaneous evidence requirement is inapplicable to the present case because it applies only to *accepted* plea offers, not *rejected* plea offers. When the ineffective assistance of counsel has led a petitioner to reject a plea offer, the petitioner argues that the applicable standard for demonstrating prejudice is that set forth in *Missouri* v. *Frye*, supra, 566 U.S. 134, and *Lafler* v. *Cooper*, supra, 566 U.S. 156, not *Lee*.

In *Lee*, the petitioner, Jae Lee, pleaded guilty to a crime that subjected him to mandatory deportation on the basis of his attorney's wrongful advice that, if he pleaded guilty, he would not be deported. See *Lee* v. *United States*, supra, 137 S. Ct. 1962. On appeal, it was undisputed that Lee's counsel was ineffective and that "deportation was the determinative issue in Lee's decision whether to accept the plea deal." (Internal quotation marks omitted.) Id., 1967. The issue was whether Lee could demonstrate prejudice "[i]n light of the overwhelming evidence of Lee's guilt" and the probability that he would have "been found guilty and received a significantly longer prison sentence, and subsequent deportation, had he gone to trial." (Internal quotation marks omitted.) Id., 1964.

The United States Supreme Court held that Lee had fulfilled his burden of demonstrating prejudice because of "the paramount importance that Lee placed on avoiding deportation." Id., 1968. The evidence demonstrated that Lee "would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a 'Hail Mary' at trial." Id., 1967. The court emphasized, however, that "[s]urmounting *Strickland*'s high bar is never an easy task . . . and the strong societal interest in finality has special force with respect to convictions based on guilty pleas. . . . Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (Citations omitted; internal quotation marks omitted.) Id.

Justice Clarence Thomas authored a dissenting opinion, in which he relied heavily on *Missouri* v. *Frye*, supra, 566 U.S. 134, and *Lafler* v. *Cooper*, supra, 566 U.S. 156, to support his view that a petitioner who has received the benefit of a guilty plea must demonstrate "not only that he would have [rejected the plea and] gone to trial," but also that "he would likely have obtained a more favorable result in the end," i.e., that he would have been acquitted or sentenced to a shorter period of incarceration. *Lee* v. *United States*, supra, 137 S. Ct. 1970–71 (Thomas, J., dissenting). Applying that standard, Justice Thomas concluded that "a reasonable court or jury applying the law to the facts of [Lee's] case" would have found Lee guilty and that "a higher prison sentence" would have been imposed. Id., 1974 (Thomas, J., dissenting). Because Lee "would have suffered the same deportation consequences regardless of whether he accepted a plea or went to trial," Justice Thomas found the evidence of prejudice to be insufficient. Id.

The majority responded that Justice Thomas' reliance on *Frye* and *Lafler* was misplaced because both of those "cases involved defendants who alleged that, but for

their [attorneys'] incompetence, they would have *accepted* a plea deal—not . . . that they would have rejected a plea." (Emphasis in original.) Id., 1965 n.1. The majority reasoned that "*Frye* and *Lafler* articulated a *different* way to show prejudice, suited to the context of pleas not accepted, not an *additional* element" to establish prejudice. (Emphasis in original.) Id. According to the majority, "[t]he issue [in the two different scenarios] is how the required prejudice may be shown." Id., 1966 n.1.

In light of the court's emphasis in *Lee* on the difference between accepted and rejected pleas in terms of how prejudice may be shown, the parties dispute whether the admonition in *Lee* regarding the need for "contemporaneous evidence to substantiate a defendant's expressed preferences" applies to habeas claims involving rejected plea offers under *Frye* and *Lafler*. Id., 1967. Our research reveals that the federal courts have arrived at conflicting conclusions on this issue. Compare *Anaya* v. *Lumpkin*, 976 F.3d 545, 555 (5th Cir. 2020) (declining to "export the *Lee* standard—the need for contemporaneous evidence"—to rejected guilty plea offers, which are governed by the standards articulated in *Frye* and *Lafler*), cert. denied,    U.S.   , 141 S. Ct. 2703, 210 L. Ed. 2d 872 (2021), with *United States* v. *Knight*, 981 F.3d 1095, 1102 (D.C. Cir. 2020) (applying *Lee*'s contemporaneous evidence standard to rejected plea offers). We need not decide whether *Lee*'s contemporaneous evidence requirement applies to rejected plea offers because, even if it does, the record in the present case contains sufficient contemporaneous evidence to substantiate the petitioner's after-the-fact testimony that he would have accepted the plea deal but for his attorney's deficient performance.

As the United States Court of Appeals for the District of Columbia Circuit observed in *Knight*, " '[t]he [United States] Supreme Court did not suggest in *Lee* that a defendant must hypothesize his counsel's advice might be erroneous and state contemporaneously that his plea decision would differ if that were so.' " *United States* v. *Knight*, supra, 981 F.3d 1106, quoting *United States* v. *Aguiar*, 894 F.3d 351, 362 (D.C. Cir. 2018). In other words, even assuming that *Lee*'s contemporaneous evidence requirement applies to both accepted and rejected pleas, such evidence is not limited to a petitioner's statements (if any) at the time he accepts or rejects the plea offer. See *Lee* v. *United States*, supra, 137 S. Ct. 1967 (court must focus on "what an individual defendant would have done" and that individual defendant's "decisionmaking"); see also *United States* v. *Akande*, 956 F.3d 257, 264 (4th Cir. 2020) (considering counsel's statements regarding petitioner's priorities during plea process); *United States* v. *Frazier*, 805 Fed. Appx. 15, 17 (2d Cir. 2020) (considering petitioner's statements at sentencing). In addition to the petitioner's prior statements, contemporaneous evidence also includes evidence of (1) the generosity of the plea offer

compared to the ultimate sentence imposed; see *United States* v. *Knight*, supra, 1103; (2) the petitioner's willingness to plead guilty; see id., 1104; and (3) the strength of the state's case. See *United States* v. *Hobbs*, 953 F.3d 853, 858 (6th Cir. 2020), cert. denied,    U.S.   , 141 S. Ct. 2791, 210 L. Ed. 2d 926 (2021); *Young* v. *Spinner*, 873 F.3d 282, 287 (5th Cir. 2017).[4]

In some cases, the available contemporaneous evidence might be equivocal, but "the absence of *unequivocal* contemporaneous evidence . . . [does not] mean that [a petitioner] cannot show a reasonable probability that he would have accepted the plea offer if he had been provided the effective assistance of counsel." (Emphasis added.) *United States* v. *Knight*, supra, 981 F.3d 1106. This is because a habeas petitioner is "not required to show either that he wanted to accept the plea offer but was dissuaded by counsel, or that he certainly would have accepted the offer but for counsel's ineffectiveness. Instead, he need[s] to show only that there was a *reasonable probability* that he would have accepted the plea offer were it not for his counsel's inadequate assistance." (Emphasis added.) Id.

Our review of the record reveals that the petitioner's testimony as to how he would have pleaded but for the deficient performance of his trial counsel was substantiated by contemporaneous evidence. Specifically, the generosity of the trial court's nine year plea offer compared to the petitioner's thirty-five year sentence, the petitioner's willingness to plead guilty to an agreeable sentence, the relatively minor difference between the trial court's plea offer and the petitioner's counterproposal, and the strength of the state's case all corroborated the petitioner's post hoc assertions that he would not have rejected the trial court's plea offer if he had received adequate advice and professional assistance from his trial counsel. See id., 1103 (recognizing "that a disparity in sentencing exposure may suffice to show prejudice under the second prong of *Strickland*"); *Pham* v. *United States*, 317 F.3d 178, 182 (2d Cir. 2003) ("a significant sentencing disparity in combination with [a] defendant's statement of his intention [are] sufficient to support a prejudice finding" under *Strickland*). To the extent that the contemporaneous evidence was equivocal; see footnote 3 of this opinion; it was up to the habeas court, as the finder of fact, to weigh the equivocal contemporaneous evidence in assessing whether to believe all, none, or some of the petitioner's testimony. See, e.g., *Echeverria* v. *Commissioner of Correction*, 193 Conn. App. 1, 15 n.6, 218 A.3d 1116 (The court "reiterate[d] the well settled principle that [an appellate court] must defer to the finder of fact's evaluation of the credibility of the witnesses that is based on its invaluable firsthand observation of their conduct, demeanor and attitude. . . . [The fact finder] is free to juxtapose conflicting versions of events and [to] determine which is more credible. . . . It is the [fact

finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none or some—of a witness' testimony to accept or reject." (Internal quotations marks omitted.)), cert. denied, 333 Conn. 947, 219 A.3d 376 (2019). On the present factual record, we will not second-guess the habeas court's credibility determination. See, e.g., *State* v. *Ayala*, 333 Conn. 225, 238, 215 A.3d 116 (2019) ("[the fact finder] was free to make its credibility determination, and we do not second-guess that determination"). Accordingly, the habeas court did not err in concluding that the petitioner had fulfilled his burden of establishing prejudice.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 51-197f provides in relevant part that, "[u]pon final determination of any appeal by the Appellate Court, there shall be no right to further review except the Supreme Court shall have the power to certify cases for its review upon petition by an aggrieved party or by the appellate panel which heard the matter. . . ." Similarly, Practice Book § 84-1 provides that "[a]n appeal may be filed with the Supreme Court upon the final determination of an appeal in the Appellate Court where the Supreme Court, upon petition of an aggrieved party, certifies the case for review."

[2] In his reply brief, the respondent claims for the first time on appeal that the habeas court "[misread] the scope of [the Appellate Court's] remand" and incorrectly concluded that it "was precluded from reassessing the Appellate Court's legal conclusion that the petitioner had satisfied the performance prong of [the *Strickland*] test . . . ." "It is axiomatic that a party may not raise an issue for the first time on appeal in [his] reply brief. . . . Our practice requires an appellant to raise claims of error in his original brief, so that the issue as framed by him can be fully responded to by the appellee in [his] brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Citations omitted; internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 197, 982 A.2d 620 (2009). We therefore decline to address the respondent's belated claim regarding the scope of the Appellate Court's remand.

[3] The respondent relies on the following conflicting, contemporaneous evidence: the petitioner's intelligence, his prior plea bargaining experience, his criminal history, his access to witness statements, his advisement of maximum sentence exposure, his willingness to stand up for himself, and his history of risk taking behavior.

[4] This list is intended to be illustrative, rather than comprehensive. There may be additional factors, depending on the facts pertinent to each individual case. Indeed, in clarifying the "standard for showing prejudice in the context of a guilty plea" in *Lee*, the United States Supreme Court "emphasiz[ed] the need for a case-by-case examination of the totality of the evidence." *Young* v. *Spinner*, supra, 873 F.3d 285.